*In re* José R. Franco Rivera y Juan Masini Soler.

*Número:* AB-92-24 *Resuelto:* 10 de diciembre de 1993

*Reina Colón de Rodríguez, Subprocuradora General, Yvonne Casanova Pelosi, Procuradora General Auxiliar,* abogadas de El Pueblo; *José R. Franco Rivera, pro se; Elí B. Arroyo,* abogado del querellado Masini Soler.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

El Lcdo. Ismael H. Herrero, Jr. se quejó ante la Procuradora General de la conducta de los Lcdos. José R. Franco Rivera y Juan M. Masini Soler imputándoles infracciones a los Cánones 34 y 36 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

En síntesis, expuso representar al Banco Santander de Puerto Rico y al Santander Federal Savings Bank. Ambas entidades están obligadas por ley a publicar en los periódicos listas de sus cuentas inactivas con el nombre y la dirección del depositante, el número de cuenta, la cantidad depositada y la sucursal. Según el licenciado Herrero, Jr. los abogados Franco Rivera y Masini Soler, por separado,([1]) se valieron de esa información y enviaron a los depositantes una carta ofreciendo sus servicios profesionales. Ésta consistió de un volante del cual se desprende su parte superior e indica el nombre y dirección del depositante, y señala:

No. de Archivo ——

### AVISO LEGAL

Nuestro *Departamento de Recuperación de Bienes ha detectado unos fondos que le pertenecen a usted.*
Si está interesado en recuperarlos, firme ante notario, LA PETICION DE RECLAMO BAJO JURAMENTO NOTARIAL y envíela lo más pronto posible para hacer el reclamo en su nombre. Haga copia para Ud. antes de enviar el original.

Atentamente,
 Lic. ——
 [Nombre Abogado]. (Énfasis suplido.) Reclamo de fondos bajo juramento notarial.

El denominado *Reclamo de Fondos* —en la parte inferior del documento— contiene como membrete el nombre y dirección del abogado y, bajo juramento notarial, hace constar el nombre del solicitante, depositante o dueño de los fondos; su mayoridad y capacidad legal para suscribirlo y el siguiente lenguaje preimpreso y estereotipado:

---

([1]) En su réplica el licenciado Masini Soler expuso que "no existe ni ha existido ninguna relación profesional, comercial, de negocios, etc., entre [él] y el Lcdo. Franco Rivera". Réplica.

Curiosamente, excepto la variación de sus nombres y direcciones, el esquema e impresos son idénticos.

Que el Departamento de Recuperación de Bienes del Estudio Legal del Lic. —— ha hecho el trabajo de investigar, rastrear y establecer que el otorgante podría tener derecho a los fondos indicados en el párrafo PRIMERO y que el otorgante desea recuperar dichos fondos.

El Otorgante por la presente nombra al Lic. ——, sus Representantes, Consejeros y Abogados como designados para actuar en su nombre en su lugar en relación a todas las gestiones que pudiera hacer en referencia a la reclamación, transferencia o distribución del dinero, créditos, o activos que se le adeuden. El otorgante da a dicho designado pleno poder y autoridad para recibir a nombre del otorgante y a su favor el dinero, y dar carta de pago y relevo en su nombre. A ninguna persona que pague el reclamo del dinero o fondos a favor del otorgante, le será requerido verificar la disposición final de los mismos.

Por valor recibido y por los servicios prestados, el otorgante, por la presente cede, asigna y transfiere al LIC. ——, sus agentes, representantes legales, consejeros, abogados y sucesores y asigna honorarios por el treinta y tres y un tercio (33.33%) por concepto de honorarios por la búsqueda, gastos legales, honorarios de abogado, gastos ordinario[s] y extraordinarios y serán pagados al LIC. —— solamente al haber recobrado satisfactoriamente los fondos por el designado LIC. —— a favor del suscribiente. Que con anterioridad al reclamo exitoso de los fondos, ningún gasto o costo será pagado por adelantado por el otorgante.

El otorgante se compromete en todo momento a indemnizar y relevar al LIC. ——, sus agentes, sus respectivos representantes legales, sucesores y asignados y a cualquier ciudad, condado, gobierno estatal y gobierno federal, sus oficiales y empleados (de aquí en adelante los obligados) de toda reclamación, acción o demanda, ya sea infundada o no, y de cualquier obligaciones, pérdidas, daños sentencias, costas y gastos, honorarios de abogado y otros gastos de cualquier naturaleza o clase por razón de honrar o negarse honrar la evidencia original de propiedad cuando sea presentada por o a favor del tenedor a su tiempo, o un tenedor que aparente ser o crean los Obligados que lo es, o el hacer el pago, entrega o crédito con respecto a la evidencia original de propiedad sin la cesión; sea causado o no, o basado en, o que surge de inadvertencia, accidente, descuido, negligencia u omisión o por no inquirir, responder o litiguen el derecho de cualquier solicitante para recibir cualquier pago, crédito, transferencia, inscripción, conversión, canje o entrega en relación a la evidencia original de propiedad, o causado por, basado en o que surja de cualquier otra materia u otro asunto.

Esta PETICION DE RECLAMO BAJO JURAMENTO NOTA-RIAL, para solicitar la recuperación de fondos está específicamente limitada a los fondos señalados en el párrafo PRIMERO, que no han sido reclamados por el suscribiente en un período no menor de cinco (5) años. Estos fondos no incluyen reintegros de contribuciones, beneficios, pagos, créditos, dividendos o dinero que no hayan sido reclamados por el otorgante en un período de cinco (5) años.

Fecha _____

Affidavit #_____ _____

 Otorgante .

Jurado y Suscrito ante mi por _____ vecino de _____, Puerto Rico, a quien doy fe de conocer personalmente. En San Juan, Puerto Rico, hoy _____ de _____ de _____.

_____

 Abogado–Notario

Reclamo de fondos bajo juramento notarial.

La Procuradora General notificó la queja a los abogados Franco Rivera y Masini Soler. Oportunamente el licenciado Franco Rivera le informó que, a su parecer, no infringió precepto ético alguno pues las cartas que envió a los depositantes no constituían un ofrecimiento de sus servicios profesionales. Por su parte, el licenciado Masini Soler ofreció excusas por los "inconvenientes que inadvertidamente y actuando de buena fe" (Tercera y última moción de reconsideración, pág. 2) pudo causar, y pidió que se pusiera fin a la controversia por entender que una comunicación suya al licenciado Herrero, Jr., desistiendo de sus gestiones de cobro, satisfizo a este último. Sin embargo, *contrario a esa afirmación*, el licenciado Herrero, Jr. sometió como evidencia unas cartas del licenciado Masini Soler cobrando a varios depositantes el 20% en vez del 33% pactado por las gestiones efectuadas hasta ese momento.[2]

_____

[2] La carta, también de carácter preimpreso y estereotipado, disponía:

Así las cosas, la Procuradora General nos sometió un informe expositivo debido a que la conducta infringía el Canon 34 del Código de Ética Profesional, *supra*, por constituir una solicitación personal, y el Canon 35 del Código de Ética Profesional, *supra*, por no ser sincera ni honrada.

Luego de una réplica del licenciado Masini Soler y un segundo informe, le concedimos veinte (20) días para presentar una (1) dúplica y mostrar causa por la cual no debía ser disciplinado. Lo hizo. En síntesis, reitera que su comunicación no fue engañosa ni inducía a error pues: (1) no existía obligación de los depositantes destinatarios en contratarlo; (2) no informaba ni decía dónde estaba el dinero pues hubo casos en los cuales "no le satisficieron sus honorarios", por que los depositantes los retiraron directamente, y (3) insistió en cobrar 20% de honorarios pues cuando el banco le rechazó el reclamo, él informó al depositante dónde podía localizar el dinero.

Subsiguientemente seguimos igual trámite con el licenciado Franco Rivera. Contamos con el beneficio de su comparecencia que, en esencia, reafirma su postura original de

---

"Estimado cliente:

"Recientemente usted nos autorizó, mediante Reclamo de Fondos Bajo Juramento Notarial a localizar y retirar, a nombre y en representación suya la cantidad arriba indicada. A esos efectos hicimos las gestiones pertinentes con el depositario de los mismos, Banco Santander de Puerto Rico, quienes se han negado a reembolsarlos alegando que el documento firmado por usted, no le es aceptable a su División Legal. Discrepamos del Banco en este respecto y entendemos que han asumido una actitud arbitraria y en menoscabo tanto de sus intereses como los nuestros.

"Nuestro acuerdo era a los efectos de que localizáramos y remitiéramos su dinero, menos nuestros honorarios profesionales. No obstante, en atención a nuestra responsabilidad profesional, le informamos que la cantidad a la cual usted tiene derecho es la que aparece arriba *y puede reclamarla directamente en la Sucursal de epígrafe*. Al no poder cumplir con parte de ese acuerdo, por las razones ajenas a nuestra voluntad antes aludidas, *creemos justo reducir los mismos, de 33 1/3% a 20%.*

"Agradeceríamos que al retirar la cantidad no reclamada nos remita el 20% de la cantidad neta recibida por usted, a la siguiente dirección: Ave. Ponce de León 461, Edif. John Morris, Suite 200, Hato Rey, P.R. 00918. *Le recordamos que sin nuestra intervención usted no se hubiese enterado de que esos dineros no reclamados le pertenecían. Esa es la importancia de nuestra cuidadosa y tediosa labor de investigación.*

"Sugerimos que retire esos fondos antes del 9 de diciembre de 1991, fecha en que pasan a la custodia del Departamento de Hacienda. Si tiene alguna duda o pregunta, le invito a que me llame al 753-3692." (Énfasis suplido.) Anejo C.

que el Canon 34 del Código de Ética Profesional, *supra*, no rige, debido a que él no ejerció labor profesional alguna pues las cantidades en depósito nunca estuvieron en "controversia". Aduce que la inclusión de su nombre como abogado "perseguía el interés de que la persona *sintiera seguridad* en querer contratar para dicho trámite por el hecho de que al tener un abogado *por el medio* eso le daba confianza. No, repito, no porque entendamos ni porque estuviéramos haciendo en efecto las gestiones en nuestra capacidad de abogado". (Énfasis suplido.) Réplica de 9 de septiembre de 1993, pág. 3.

## II

Tradicionalmente la profesión legal ha mirado con recelo el uso de la publicidad y la solicitación. Esta actitud parte de la creencia de que la virtud y la buena reputación son la mejor promoción. Desde 1908 la diversa reglamentación ética propuesta por la Asociación de Abogados Americanos (*American Bar Association*) ha delineado normas al respecto. L. Hill, *A Lawyer's Pecuniary Gain: The Enigma of Impermissible Solicitation*, 5 Geo. J. Legal Ethics 393, 394 (1991); L. Hill, *Solicitation by Lawyers: Piercing the First Ammendment Veil*, 42 Me. L. Rev. 369, 370 (1990); *Nota: Constitutional Regulation of "Targeted Direct Mail Solicitation" By Attorneys after Shapero–A Proposed Rule Of Conduct*, 34 Vill. L. Rev. 281 (1989); *Nota: Shapero v. Kentucky Bar Association and Targeted, Direct–Mail Solicitation by Lawyers: How can States Protect Their Residents from Overreaching and Deceptive Solicitation?*, 1989 (Núms. 1–2) Utah L. Rev. 521, 522 (1989); C. Wolfram, *Modern Legal Ethics*, pág. 776 (1986); N. Zomick, *Attorney Solicitation of Clients: Proposed Solutions*, 7 Hofstra L. Rev. 755, 757 (1979). Puerto Rico no es excepción.[3]

---

[3] Nuestro Canon 36(a) del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, recoge esta visión.

 La reglamentación ética en torno a la publicidad y solicitación y su impacto sobre la libertad de expresión garantizada en la Primera Enmienda de la Constitución federal ha sido objeto de importantes pronunciamientos judiciales durante las últimas dos (2) décadas. En *Bates v. State Bar of Arizona*, 433 U.S. 350 (1976), el Tribunal Supremo federal resolvió que los anuncios publicitarios de los abogados están protegidos constitucionalmente por la libertad de expresión y no pueden prohibirse, aunque el Estado puede restringir los falsos, engañosos o que induzcan a error. Esa decisión descansó fundamentalmente en *Va. Pharmacy Bd. v. Va. Consumer Council*, 425 U.S. 748 (1976), al establecer que el interés de los consumidores en el flujo libre de información veraz sobre actividades comerciales lícitas justificaba conceder a la expresión comercial (*comercial speech*), alguna protección al amparo de la Primera Enmienda de la Constitución. J.L. Maute, *Scrutinizing Lawyer Advertising And Solicitation Rules Under The Commercial Speech and Antitrust Doctrine*, 13 Hastings Const. L.Q. 487, 496 (1986); *Nota*, supra, págs. 286–287.([4]) *In re R.M.J.*, 455 U.S. 191, 203 (1982), explicó así los criterios a utilizarse sobre la reglamentación de anuncios publicitarios de abogados:

> Los anuncios publicitarios veraces relacionados con actividades legales gozan de la protección de la Primera Enmienda. Pero cuando el contenido particular o método de publicidad su-

---

"El mejor anuncio del abogado es la reputación de idoneidad ganada en el ejercicio de su profesión."

([4]) Posteriormente extendió la protección de la Primera Enmienda a la solicitación por correo en representación de una asociación sin fines de lucro, pero no a la personal con fines de lucro en circunstancias donde existen riesgos que el Estado tiene derecho a prevenir. *In re Primus*, 436 U.S. 412 (1978).

En *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), el Tribunal resolvió que se atenta contra la libertad de expresión cuando se disciplina a un abogado por haber publicado un anuncio *no engañoso* dirigido a personas con un problema legal específico, y no cuando el abogado omite en su anuncio que un litigio puede implicar la responsabilidad del cliente por las costas.

De acuerdo con esa decisión, la reglamentación mediante requisitos de contenido tiene un impacto menor sobre los intereses del anunciante que la prohibición; por ello, para disminuir la posibilidad de confusión o engaño, pueden exigirse advertencias o salvedades. *Zauderer v. Office of Disciplinary Counsel*, supra, pág. 650.

giere que es inherentemente engañoso o cuando la experiencia ha demostrado que de hecho tales anuncios están sujetos a abuso, los Estados pueden imponer restricciones apropiadas. Los anuncios engañosos pueden prohibirse por completo. Pero los Estados no pueden establecer una prohibición absoluta sobre cierto tipo de información con potencial de ser engañosa; p.e.: un listado de áreas de práctica, si la información también puede ser presentada de manera que no sea engañosa. (Traducción nuestra.)

■ Subsiguientemente, *Shapero v. Kentucky Bar Assn.*, 486 U.S. 466 (1987), reiteró que no podía prohibirse la solicitación de negocios mediante cartas *no engañosas* a clientes potenciales con problemas legales conocidos por el abogado. El Tribunal rechazó establecer una analogía entre la solicitación por correo y la personal, puesto que la primera no encierra el mismo grado de peligro de fraude, influencia indebida, intimidación o engaño que la segunda.([5]) *Shapero v. Kentucky Bar Association,* supra, pág. 475; *Nota,* supra, pág. 307.

En contraste, la solicitación personal por abogado está prohibida —*Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 465–466 (1978) supra— ya que la confrontación cara a cara:

...es significativamente mayor cuando un abogado, profesional entrenado en el arte de la persuasión, realiza —personalmente— actos de solicitación a una persona no sofisticada, lesionada o angustiada. Tal individuo puede colocar su confianza

---

([5]) Desde *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978), se había reconocido que la entidad estatal encargada de reglamentar la abogacía puede, constitucionalmente, disciplinar a un abogado por solicitar personalmente un negocio para ofrecer ganancias monetarias a personas que no sean sus clientes y bajo circunstancias que probablemente representarían un atentado contra algún interés que el Estado quiere proteger.

En *Edenfield v. Fane*, 61 U.S.L.W. 4431 (26 de abril de 1993), se reiteró la norma establecida en *Ohralik v. Ohio State Bar Assn.*, supra, pero declaró inconstitucional, por violar las Enmiendas Primera y Decimocuarta de la Constitución federal, una reglamentación de la Junta de Contables de Florida que prohibía que los Contadores Públicos Certificados realizaran cualquier tipo de solicitación directa y personal para promover sus servicios profesionales a personas que no fueran sus clientes y no hubieran requerido sus servicios. La distinción se hizo a base de que la prohibición a la solicitación personal depende de la profesión en la que se realiza. El abogado es un experto en el arte de la persuasión mientras que el contable no lo es.

en el abogado, independientemente de sus calificaciones o a la necesidad real de tener representación, simplemente como respuesta a la persuasión bajo circunstancias conducentes a un consentimiento no informado. Aunque se argumenta que la solicitación personal es valiosa porque permite informar a una víctima de alguna desgracia acerca de sus derechos legales, la misma condición de esa persona no sólo la hace más susceptible a ser influenciada, sino que, además, la consulta sea más intrusiva. Bajo estas condiciones adversas, las propuestas de un abogado no llamado (*uninvited*) para una consulta pueden angustiar al individuo simplemente por la intromisión e invasión a su intimidad, aunque no se materialice ningún daño. En estas circunstancias no es irrazonable que el Estado presuma que la solicitación personal por abogado, en unas ocasiones más que otras, será perjudicial a la persona solicitada. (Traducción nuestra.)

La situación expuesta fue considerada por el tribunal como suficiente para establecer una norma profiláctica tajante contra la solicitación personal. Además, el tribunal consideró importante que la solicitación personal, contrario a la escrita, en muchas ocasiones no es susceptible de ser verificada debido a que, usualmente, se lleva a cabo en privado, sin testigos o evidencia escrita de lo dicho por el abogado. Ello justifica una restricción mayor del Estado.[6]

Ahora bien, la decisión dio a la solicitación por correo a personas con problemas legales conocidos *el mismo tratamiento* que a los anuncios publicados, pues ello viabiliza y permite que el consumidor también reflexione y utilice su juicio libremente. *Shapero v. Kentucky Bar Association*, supra, pág. 476; *In re Anis*, 60 U.S.L.W. 2465 (1992); *McHenry v. Florida Bar*, 61 U.S.L.W. 2409 (1992). En *United States v. Kokinda*, 497 U.S. 720, 725 (1990) —citado posteriormente en *Edenfield v. Fane*, supra— dicho foro dicta-

---

[6] Véanse, también: *Bates v. State Bar of Arizona*, 433 U.S. 350, 383–384 (1976); Nota, *Shapero v. Kentucky Bar Association and Targeted, Direct–Mail Solicitation by Lawyers: How Can States Protect Their Residents from Overreaching and Deceptive Solicitation?*, 34 Vill. L. Rev. 281, 530 (1981); L. Hill, *A Lawyer's Pecuniary Gain: The Enigma of Impermissible Solicitation*, 5 Geo. J. Legal Ethics 393, 406–407 (1991); N. Zomick, *Attorney Solicitation of Clients: Proposed Solutions*, 7 Hofstra L. Rev. 755, 770 (1979); L. Andrews, *Lawyer. Advertising and The First Ammendment*, 1981 Am. B. Found. Research J., 967, 976–978.

minó que "la solicitación es una forma reconocida de expresión protegida por la Primera Enmienda". (Traducción nuestra.)

Nuestras decisiones, aunque pocas, no han estado ajenas a esta jurisprudencia. Así, en *In re González*, 112 D.P.R. 430, 433 (1982), rechazamos un ataque constitucional fundamentado en la libertad de expresión, contra el entonces vigente Canon 36(b)(1) del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, e impusimos sanciones disciplinarias por razón de que los *anuncios* publicados contenían "un alto potencial de inducir a error, a mala interpretación o confusión, en dos aspectos importantes". Ese mismo día, en *In re Ibarra Ortega*, 112 D.P.R. 434, 437 (1982), sancionamos con multa unos anuncios que tendían "a generar confusión, desconcierto, falsas expectativas y una pobre opinión sobre la seriedad e integridad del profesional". Y en *In re Valentín González*, 115 D.P.R. 68 (1984), resolvimos que el envío *indiscriminado* a clientes potenciales específicos, de una comunicación en donde el abogado ofrecía sus servicios legales en accidentes de trabajo, violaba los Cánones 34 y 36 del Código de Ética Profesional, *supra*. No dilucidamos si el tipo de solicitación encerrada era falsa e inducía a error o confusión.

## III

Como expusimos, la Procuradora General imputa a los querellados Franco Rivera y Masini Soler violaciones a los Cánones 34 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([7]) Conforme nuestra jurisprudencia y la del Tribu-

---

([7]) El Canon 34 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone sobre la instigación o gestión de pleitos.

"Actúa contrario a los altos postulados de la profesión el abogado que, con propósito de lucro y sin ser requerido para que ofrezca su consejo o asesoramiento legal, aliente o estimule, en alguna forma, a clientes potenciales para que inicien reclamaciones judiciales o de cualquier otra índole. Es también contrario a la sana práctica de la profesión el que un abogado, sin ser requerido, bien lo haga personalmente o a través de terceras personas, investigue o rebusque defectos en títulos u otras posi-

nal Supremo federal, el envío de cartas no engañosas o no conducentes a error ofreciendo los servicios profesionales de un abogado a personas con problemas conocidos por éste, goza de protección al amparo de la primera enmienda. *No pueden prohibirse categóricamente.* Atentaría contra la libertad de expresión sancionar, de acuerdo con el Canon 34 del Código de Ética Profesional, *supra*, a los abogados querellados Franco Rivera y Masini Soler por el mero hecho de haber enviado unas cartas ofreciendo sus servicios a las personas con cuentas inactivas.

Aclarado así el ámbito decisorio, la cuestión se reduce a si la solicitación llevada a cabo por ambos fue mediante cartas falsas, engañosas o conducentes a error. Según indicado, el Canon 35 del Código de Ética Profesional, *supra*, impone un deber de sinceridad y honradez al abogado *erga omnes*; incluye a sus representados y clientes potenciales.

A la luz de todas las circunstancias presentes, resolvemos que los licenciados Franco Rivera y Masini Soler flagrantemente violaron ese precepto. *Primero*, estamos ante un modus operandi no incidental, sino hábilmente planificado —se destaca el impresionante *Departamento de Recuperación de Bienes*— con el único objetivo de lucrarse mediante el cobro irrazonable de una tercera parte de

bles fuentes o causas de reclamaciones a los fines de beneficiarse en alguna forma mediante la prestación de sus servicios profesionales.

"Empaña la integridad y el prestigio de la profesión y es altamente reprobable el que un abogado, actuando directamente o a través de intermediarios o agentes, haga gestiones para proporcionarse casos o reclamaciones en que intervenir o para proporcionarlos a otros abogados. Incurre en igual falta el abogado que dé u ofrezca beneficios, favores o compensación de clase alguna a empleados públicos, ajustadores de seguros u otras terceras personas con el fin de ganarse su favor para el referimiento de asuntos que puedan dar base a reclamaciones o casos y, por ende, proporcionarle al abogado aumento en su clientela.

"Por tratarse de una conducta desdorosa, tanto con respecto a la profesión legal como con la justicia en general, todo abogado está obligado a informar a los organismos competentes sobre cualquier caso en que se incurra en dicha práctica impropia y reprensible inmediatamente después de tener conocimiento ello."

El Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, exige a todo abogado el deber de actuar con sinceridad y honradez. En lo pertinente, dispone:

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada."

honorarios en una gestión de por sí fácil, *no controversial* y de carácter rutinario. De ciento cincuenta (150) casos, el licenciado Masini Soler lo usó con éxito en treinta y cinco (35) cuentas inactivas en varios bancos y compañías de seguros. Por su parte, el licenciado Franco Rivera envió la notificación a un número no determinado de personas. Desconocemos los resultados y las cuantías que ambos generaron en honorarios de abogado. *Segundo,* los "avisos legales" que enviaron —que no son más que cartas ofreciendo sus servicios— inherentemente *inducen a error.* Carecían de referencia alguna a que los fondos referidos eran depósitos en cuentas bancarias inactivas.([8]) Asimismo, el formulario preimpreso y estereotipado titulado "RECLAMO DE FONDOS BAJO JURAMENTO NOTARIAL" —que formaba parte de las cartas— no precisaba el origen de los fondos que ofrecían recuperar.([9]) Y *tercero,* los querellados Franco Rivera y Masini Soler *no* informaron a los clientes potenciales que podían recuperar los fondos depositados *sin necesidad de los servicios de un abogado.*([10]) Para un lego, el contenido de la carta daba una impresión distinta. Esta última advertencia era *crucial* para que los anuncios no indujeran a error, ya que su omisión podía hacer creer a los destinatarios que los servicios legales ofrecidos *eran imprescindibles* para recobrar los fondos. Como cuestión de

---

([8]) Nos referimos a la carta enviada por el licenciado Franco Rivera a José Margarida Gónzalez y las enviadas por el licenciado Masini Soler a Carmelo Martínez Figueroa y al Dr. Luis Flores Villar.

([9]) El primer párrafo del referido formulario disponía:

"Yo ——, como dueño de fondos por la cantidad de $ —— aproximadamente pudiendo ser de propiedad abandonada propiedad no reclamada, activos de una Corporación disuelta o existente, dividendos no reclamados o distribución corporativa, réditos de Pólizas de seguros de vida, o fondos provenientes de una herencia u otra propiedad expropiada. Bajo juramento notarial expongo lo siguiente: ..."

([10]) En *Bates v. State Bar of Arizona,* supra, pág. 375, el Tribunal expresó así su desacuerdo con la falta de información necesaria en la solicitación:

"De todas formas, nosotros veremos como dudosa cualquier justificación (para una reglamentación) que se fundamenta en los beneficios de la ignorancia pública... Aunque, por supuesto, el tribunal retiene el poder para corregir omisiones que tienen el efecto de presentar un cuadro inexacto, el remedio preferido es la mayor divulgación, en vez de menor." (Traducción nuestra.)

realidad, esa fue la premisa de la solicitación. Ello queda demostrado en aquellas situaciones en que el licenciado Masini Soler informó —y el cliente recuperó directamente los fondos, o el Banco se negó a honrar el "reclamo" legal— aún así pretendió cobrar *siempre* honorarios reducidos a un 25% o 20%. Véanse los anejos A B y C.

Con vista a la naturaleza y gravedad de la infracción ética, *se decreta la separación de los licenciados Franco Rivera y Masini Soler del ejercicio de la abogacía por el término de seis (6) meses.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Hernández Denton no intervino.

# ANEJO A

LAW OFFICES
## JUAN M. MASINI-SOLER
ABOGADO – NOTARIO

ESQUIRE BUILDING
PENTHOUSE SUITE 901
VELA ST. & PONCE DE LEÓN AVE.
HATO REY, PUERTO RICO 00919

TEL. (809) 751-0447
FAX. (809) 751-7800

27 de agosto de 1991

Sor Tomasina Bueno
Hermanas Mercedarias de la Caridad, Corp.
HC 02 Box 8001
Guaynabo, P. R. 00971

Estimada Sor Bueno:

"Más vale pálido una vez que cientas colorado".

Es un tanto embarazoso escribirle esta carta. Embarazoso para nosotros porque ustedes son nuestros hermanos en Cristo, y embarazoso a ustedes porque le deben a este hermano un dinero, el cual se debió haber pagado al rendirse unos servicios.

Hace unas semanas le escribimos con respecto a una cantidad de dinero a nombre de ustedes que aparecía como no reclamada.

Cuando sus representantes visitaron a nuestro asociado, Sr. Manuel Riego, de la mejor buena fé y consideración le informamos dónde estaba dicho dinero y cómo se podía recobrar. Esto normalmente no se hace de esta manera, sino que se firman los documentos correspondientes para luego nosotros recuperar el dinero. No obstante, en nuestro deseo de ayudar al Convento lo hicimos de la manera que más rápido le permitía recuperar el dinero. Con gusto aceptamos la promesa de pagar nuestros honorarios una vez que hubiesen recuperado dicho dinero, sin embargo no fue así.

Seamos justos los unos con los otros. Ustedes recobraron un dinero del cual no sabían que tenían ustedes derecho a recobrar; nosotros fuimos instrumentales en que ustedes recobraran el mismo. Ustedes tienen el dinero recobrado y ahora nos gustaría a nosotros tener nuestros honorarios. La cantidad recobrada fue el total de $3,591.78. El acuerdo era que nuestros honorarios por localizar el dinero y localizarlas a ustedes era del 33% de tal cantidad; o sea, $1,197.14. Esa es la cantidad en honorarios que le adeudan a esta oficina.

No obstante, en consideración al Convento, y si se hace el pago en los próximos 15 días, estamos dispuestos a rebajar la cantidad del 33% al 25%; o sea, que la cantidad adeudada sería de $897.95.

Como dice el refran folklórico puertorriqueño que cito al comienzo de esta carta; es mejor pasar por un momento desconcertante y aprender algo que sufrir muchos momentos de vergüenza. Espero que ustedes comprendan que sólo estamos solicitando lo que justo y razonablemente nos corresponde.

Si tiene usted alguna duda o pregunta, favor de comunicarse conmigo al teléfono 758-2090.

Sinceramente,

Lcdo. Juan M. Masini-Soler

# ANEJO B

LAW OFFICES
## JUAN M. MASINI-SOLER
ABOGADO – NOTARIO

ESQUIRE BUILDING
PENTHOUSE SUITE 901
VELA ST. & PONCE DE LEÓN AVE.
HATO REY, PUERTO RICO 00919

TEL. (809) 751-0447
FAX. (809) 751-7806

21 de noviembre de 1991

Sor Tomasina Bueno
Hermanas Mercedarias de la Caridad, Corp.
HC 02 Box 8001
Guaynabo, P. R. 00971

Estimada Sor Tomasina:

Hago referencia a nuestra carta del 27 de agosto de 1991, copia adjunta, la cual se explica por sí sola.

En la misma le solicitaba el pago de los honorarios legales correspondientes al Reclamo de Fondos hecho por usted, a tenor con la gestión realizada por esta oficina, en la cantidad de $897.95. Como recordará, ésto significaba también una rebaja ya que los honorarios reales adeudados eran de $1,197.14. Dicha rebaja era a los efectos de que efectuara el pago en los "próximos 15 días".

Habiendo pasado dos meses y medio de nuestra carta sin tener ninguna respuesta de parte suya, sirva la presente para requerirle, de manera final y firme, el pago de los honorarios adeudados a esta oficina en su cantidad total; o sea, $1,197.14, o nos veremos obligados a continuar los trámites de nuestra reclamación en pago de honorarios por los canales oficiales correspondientes.

Le urgó a que evite mayores contratiempos, remitiendo la cantidad adeudada a nuestra oficina o en su defecto comunicándose con nosotros para discutir el asunto.

Sinceramente,

Lcdo. Juan M. Masini-Soler

JMMS:il
Anejo

# ANEJO C

## Juan M. Masini-Soler

Abogado Y Notario
Attorney-At-Law & Notary Public

TEL. 751-0447-753-3692
P.O. Box 3367
Old San Juan, Puerto Rico 00904

Sr. Edwin Cruz Mendez
 1922 Francisco Zuñiga St.
 Urb. Fair View
 RIO PIEDRAS, P.R. 00926

Re: Cantidad $880.83
 Banco Santander de P. R.
 Sucursal # 013-antes CAGUAS FEDERAL
 Caparra, Octavio Rodriguez,Gerente

Estimado cliente:

Recientemente usted nos autorizó, mediante Reclamo de Fondos Bajo Juramento Notarial a localizar y retirar, a nombre y en representacion suya la cantidad arriba indicada. A esos efectos hicimos las gestiones pertinentes con el depositario de los mismos, Banco Santander de Puerto Rico, quienes se han negado a reembolsarlos alegando que el documento firmado por usted, no le es aceptable a su División Legal. Discrepamos del Banco en este respecto y entendemos que han asumido una actitud arbitraria y en menoscabo tanto de sus intereses como los nuestros.

Nuestro acuerdo era a los efectos de que localizariamos y remitiríamos su dinero, menos nuestros honorarios profesionales. No obstante, en atención a nuestra responsabilidad profesional, le informamos que la cantidad a la cual usted tiene derecho es la que aparece arriba y puede reclamarla directamente en la Sucursal de epigrafe. Al no poder cumplir con parte de ese acuerdo, por las razones ajenas a nuestra voluntad antes aludidas, creemos justo reducir los mismos, de 33 1/3% a 20%.

Agradeceriamos que al retirar la cantidad no-reclamada nos remita el 20% de la cantidad neta recibida por usted, a la siguiente dirección: Ave. Ponce de León 461, Edif. John Morris, Suite 200, Hato Rey, P. R. 00918. Le recordamos que sin nuestra intervención usted no se hubiese enterado de que esos dineros no reclamados le pertenecian. Esa es la importancia de nuestra cuidadosa y tediosa labor de investigación.

Sugerimos que retire esos fondos antes del 9 de diciembre de 1991, fecha en que pasan a la custodia del Departamento de Hacienda. Si tiene alguna duda o pregunta, le invito a que me llame al 753-3692.

Atentamente,

Lcdo. Juan M. Masini-Soler

11|11|91

cc: Banco Santander de Puerto Rico
 División Legal
 Licda. Adela Surillo. P.O.Box 11550
 SAN JUAN, P.R. 00922