EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Domingo Collazo Sánchez | Querella<br><br>2003 TSPR 128<br><br>159 DPR _____ |

Número del Caso: CP-2002-9


Fecha: 30 de junio de 2003


Oficina del Procurador General:

                    Lcda. Cynthia Iglesias Quiñones
                    Procuradora General Auxiliar


Abogado de la Parte Querellada:
                    Lcdo. Irving K. Hernández Valls



Materia: Conducta Profesional
        (La suspensión será efectiva una vez advenga final
        y firme la Sentencia, conforme la Regla 45 del
        Reglamento del Tribunal Supremo sobre
        reconsideración).

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se
hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Domingo Collazo Sánchez                    CP-2002-9

PER CURIAM

San Juan, Puerto Rico, a 30 de junio de 2003.

En este caso nos corresponde dilucidar si el Lic. Domingo Collazo Sánchez incurrió en conducta profesional antiética al otorgar las Escrituras Número 47 y 48 del 5 de septiembre de 1980, y dar fe en las mismas de un hecho que le constaba era falso.[1]

I

El 27 de septiembre de 2000, las señoras Sara Piñero Márquez y Denise Sánchez Pimentel presentaron sendas quejas contra el Lic. Collazo

---

[1] El Lic. Domingo Collazo Sánchez fue admitido al ejercicio de la abogacía el 26 de noviembre de 1965, y al ejercicio de la notaría el 14 de diciembre de ese mismo año.

Sánchez ante este Tribunal.[2] Mediante las mismas, ambas se quejaron de la conducta profesional del licenciado en su desempeño como notario público al autorizar las Escrituras Número 47 y 48 del 5 de septiembre de 1980.[3] Alegaron que el licenciado incurrió en conducta profesional antiética al otorgar las susodichas escrituras, debido a que la parte que compareció como compradora y deudora en dicha escritura no era la parte con genuino interés en adquirir la propiedad objeto de las mismas. Alegaron que las escrituras eran simuladas por lo que el querellado dio fe de un hecho que le constaba era falso faltando a su deber de honradez y de sinceridad, en violación al Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. 1X C 35. Los hechos, en síntesis, fueron los siguientes.

En 1980, el licenciado Collazo Sánchez otorgó la Escritura Núm. 47 en la que hizo constar que la señora Sánchez Pimentel compró al matrimonio Carmona-Quiñones, una propiedad ubicada en la urbanización Alturas de Río Grande por la suma de $45,600. El notario querellado dio fe, en dicha escritura, de que en el acto de la firma del documento la compradora entregó a los vendedores la suma de $15,000, y que el balance del precio de venta se retuvo para el pago en su día del gravamen hipotecario.

Ese mismo día, mediante la Escritura Núm. 48, se constituyó una hipoteca sobre la propiedad objeto de la

---

[2] La Sra. Piñero Márquez era tía política de la Sra. Sánchez Pimentel al momento de los hechos, y hasta que se decretó el divorcio de la primera.
[3] Las dos quejas fueron posteriormente consolidadas.

referida compraventa para garantizar el pagaré de $15,000 que vencía con su presentación. No obstante lo consignado en dichas escrituras, los verdaderos compradores de la propiedad era el matrimonio compuesto por la señora Piñero Márquez (una de las aquí querellantes) y su esposo el señor Velázquez Mojica, hecho que le constaba al notario aquí querellado. El matrimonio Mojica-Piñero deseaba que la propiedad figurara a nombre de la señora Sánchez Pimentel, sobrina del señor Velázquez Mojica, toda vez que el crédito del matrimonio Velázquez-Piñero estaba seriamente afectado por lo que temían que no cualificaran para asumir la deuda hipotecaria sobre la propiedad objeto de la venta.

El matrimonio Velázquez-Piñero y la Sra. Sánchez Pimentel acordaron que cuando el matrimonio resolviera sus problemas económicos pasarían la propiedad a nombre de ellos.

Luego de los trámites de rigor y de una exhaustiva investigación, el Procurador General presentó una querella contra el Lic. Collazo Sánchez en la que se le imputaron los siguientes cargos:

> EL LIC. DOMINGO COLLAZO SÁNCHEZ FALTÓ A LA FE NOTARIAL CUANDO A SABIENDAS DE QUE LA PARTE QUE COMPARECIÓ COMO COMPRADORA Y DEUDORA RESPECTIVAMENTE EN LAS ESCRITURAS NÚM. 47 Y 48 DE 5 DE SEPTIEMBRE DE 1980, NO ERA LA PARTE CON GENUINO INTERÉS DE ADQUIRIR EN CALIDAD DE DUEÑA LA PROPIEDAD OBJETO DE LAS MISMAS.

> EL LIC. DOMINGO COLLAZO SÁNCHEZ INCURRIÓ EN CONDUCTA PROFESIONAL CONSISTENTE EN FALTAR A SU DEBER DE SINCERIDAD, EN VIOLACIÓN AL CANON 35 DE LOS DE ÉTICA PROFESIONAL, 4 L.P.R.A. AP. IX C 35, CUANDO AUTORIZÓ UN DOCUMENTO

> PÚBLICO EN EL CUAL LE CONSTABA UN HECHO QUE
> NO ERA VERDAD.

Vista la querella presentada por el Procurador General y la contestación a la misma presentada por el Lic. Collazo Sánchez, se nombró una Comisionada Especial para que recibiera la prueba y nos rindiera un informe con sus determinaciones de hecho y las recomendaciones que estimara pertinentes.  Examinado dicho informe, estamos en posición de resolver.

## II

El Canon 35 de Ética Profesional, *supra*, establece lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria  a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> **El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, <u>al redactar affidávit u otros documentos,</u> y al presentar causas.** El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable. (Énfasis nuestro.)

Como puede observarse, el Canon 35 impone al abogado un deber de sinceridad y honradez frente a todos. Véase además, <u>In re: Astacio Caraballo</u>, Res. el 12 de agosto de

1999. 2000 T.S.P.R. 11; In re: Franco Rivera y Masini Soler, 134 D.P.R. 823 (1993). El referido canon impone a todo abogado unas normas mínimas de conducta, indispensables para preservar el honor y la dignidad de la profesión. Estas normas mínimas deben ser observadas no sólo en la tramitación de los pleitos, sino en toda faceta desempeñada por los abogados. Cualquier hecho aseverado en un instrumento público por un notario que no concuerde con la verdad constituye una violación al Canon 35 del Código de Ética Profesional, supra, independientemente de si hubo intención de faltar a la verdad. In re Tejado Rivera, res. el 24 de septiembre de 2001, 2001 T.S.P.R. 136.

Por su parte, el artículo 2 de la Ley Notarial de Puerto Rico recoge el principio de la fe pública notarial. Sobre este particular, dicho artículo de la ley dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

La fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial.  El Estado le confiere a un documento autorizado por un notario, bajo su firma, signo, sello y rúbrica, **una presunción de credibilidad y certeza** de que lo afirmado en el mismo es cierto, correcto y concuerda con la realidad.  A tales efectos, este Tribunal ha recalcado que al autorizar un documento, el notario da fe pública y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente. Asegura además que el documento es legal y verdadero, y que se trata de una transacción válida y legítima.  Véase, In re: Feliciano Ruíz, 117 D.P.R. 269 (1986).  El violentar la función central de custodiar la fe pública constituye conducta que queda al margen de la ética del notario público. Ello, debido a que al quebrantar la misma, necesariamente se está faltando a la verdad de los hechos. *Torres Peralta*, El Derecho Notarial Puertorriqueño, Carolina, 1995.

Cuando un notario hace constar hechos no veraces en una escritura pública, aún cuando no mediare intención de faltar a la verdad sino ausencia de diligencia o celo en la gestión notarial, incurre en falta. *Torres Peralta*, *supra*. El notario, "como depositario de la fe pública--de la confianza de los particulares y del Poder público--, ha de tener un grado de responsabilidad muy considerable". *M. Sanahuja y Soler*, Tratado de Derecho Notarial, Barcelona, Ed. Bosch, 1945, T. I, pág. 340.

En síntesis, nuestro ordenamiento jurídico condena enérgicamente la participación consciente de un abogado, como funcionario o parte, en el asesoramiento, redacción u otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime dicha conducta. Tal conducta es incompatible con la función pública del notario y las exigencias de veracidad y honestidad que dicha función acarrea.

## III

A pesar de que la investigación efectuada por el Procurador General demuestra serias incongruencias en el testimonio de las quejosas y que la veracidad de los mismos es altamente cuestionable en cuanto a otros aspectos de las quejas, el propio querellado aceptó su responsabilidad ante los hechos aducidos y cooperó plenamente con la investigación de los mismos.

Así, no existe controversia en cuanto a que en 1980, el licenciado Collazo Sánchez otorgó una escritura mediante la cual permitió que compareciera como parte compradora una persona que en realidad no era la parte con genuino interés en adquirir el inmueble. Al así hacerlo, dio fe de hechos que le constaban eran falsos quebrantando los postulados más fundamentales de la fe pública notarial.

El licenciado Collazo Sánchez no debió autorizar dichas escrituras en el momento en que advino en conocimiento de que los otorgantes deseaban hacer constar

en las mismas un hecho que no era cierto. Ello, independientemente de las razones invocadas para dicho artificio.

Por otro lado, cabe señalar que el 29 de diciembre de 2002, el licenciado Collazo Sánchez solicitó darse de baja tanto de la abogacía como de la notaría por motivo de un derrame cerebral masivo que lo inhabilitó para continuar practicando sus labores profesionales. Dicha renuncia aún no ha sido aceptada por este Tribunal debido a que estaba pendiente contra él la querella de marras.

Ante tales hechos, y tomando en consideración que el licenciado Collazo Sánchez sufrió un infarto con derrame cerebral masivo que precipitó su retiro de la profesión,[4] y que del expediente de dicho letrado surge que en los treinta y siete (37) años de práctica no ha tenido ningún antecedente disciplinario, la Comisionada Especial recomendó que baste como única sanción, "la dimanante del trámite aleccionador de la querella".

No obstante la recomendación de la Comisionada Especial, no podemos condonar la participación consciente del licenciado Collazo Sánchez, como funcionario público, en la redacción y otorgamiento de documentos con información que le constaba al querellado era falsa.

Así, habiendo examinado el expediente del licenciado Collazo Sánchez y tomando en consideración los hechos

---

[4] En diciembre de 2001 el querellado cerró su bufete para acogerse al retiro, aunque continuaba practicando la profesión desde su casa de forma muy limitada. Luego del infarto cesó por completo sus labores profesionales.

particulares del caso de autos, resolvemos suspenderlo del ejercicio de la abogacía y la notaría por un período de un (1) mes. Una vez transcurrido dicho término automáticamente se dará de baja a Collazo Sánchez del ejercicio de la abogacía.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Domingo Collazo Sánchez                    CP-2002-9


SENTENCIA


San Juan, Puerto Rico, a 30 de junio de 2003.


Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte integral de la presente, se dicta sentencia y se suspende por el término de un (1) mes al Lic. Domingo Collazo Sánchez del ejercicio de la abogacía y la notaría.

Una vez transcurrido dicho término automáticamente se dará de baja a Collazo Sánchez del ejercicio de la abogacía.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo