EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                                              | 2005 TSPR 152    |
|                                                     |                  |
| José A. de la Texera Barnés                         | 165 DPR _____    |
| José G. Marrero Luna                                |                  |

Número del Caso: CP-1995-15

Fecha: 8 de septiembre de 2005

Oficina del Procurador General:

          Lcda.  Yvonne Casanova Pelosi
          Procuradora General Auxiliar

Abogados de los Querellados:

          Lcdo. Julio Eduardo Torres
          Lcdo. Juan Arbona Torres

Materia: Conducta Profesional
         (La suspensión del abogado José A. de la Texera Barnes
         advino final y firme el día 7 de octubre de 2005).
         (La suspensión del abogado José G. Marrero Luna advino
         final y firme el día 25 de octubre de 2005).

Este documento constituye un documento oficial del Tribunal Supremo
que está sujeto a los cambios y correcciones del proceso de
compilación y publicación oficial de las decisiones del Tribunal. Su
distribución electrónica se hace como un servicio público a la
comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

José A. de la Texera Barnes          CP-95-15
José G. Marrero Luna


PER CURIAM


En San Juan, Puerto Rico, a 8 de septiembre de 2005.


Contra los abogados José A. de la Texera Barnés y José G. Marrero Luna se presentó querella por violación al Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C.38, a raíz de un incidente por el cual fueron hallados culpables del delito de alteración a la paz.

Luego de estudiar el expediente, el informe del Comisionado Especial y la querella presentada, determinamos que ambos abogados violaron el Canon 38 de Ética Profesional. A continuación exponemos los hechos que motivaron la presentación de la querella, según el informe sometido por el Comisionado Especial el 28 de mayo de 1996.

I.

Los querellados, José A. de la Texera Barnés y José G. Marrero Luna, fueron acusados por el delito de alteración a la paz, artículo 260 del entonces vigente Código Penal de Puerto Rico, 33 L.P.R.A. § 4521. Al querellado de la Texera Barnés también se le imputó el delito de agresión agravada, artículo 95(b), 33 L.P.R.A. § 4032(b).

El juicio se celebró el 31 de marzo de 1994 ante el extinto Tribunal de Distrito, Sala de Caguas. Ambos fueron hallados culpables del delito de alteración a la paz y cada uno fue sentenciado a pagar $100.00 de multa. De la Texera Barnés fue absuelto del delito de agresión agravada.

Ambos acusados apelaron la sentencia y el caso fue referido a la Unidad Especial de Jueces de Apelaciones que había sido creada para esa fecha. El Hon. Ángel F. Rossy García, Juez de Apelaciones, dictó sentencia el 24 de octubre de 1994, confirmando las sentencias recurridas. En la nota al calce número 8 de su sentencia comentó lo siguiente:

> El Canon 38 de Ética Profesional dispone, en lo pertinente, que "...todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable." Cabe destacar que, independientemente de los motivos que dieron pie al desafortunado incidente objeto del presente recurso, la conducta de los apelantes para con el Sr. Rivera Puig fue altamente reprobable.

Posteriormente, la sentencia fue referida al Procurador General por el Director de la Oficina de Investigaciones y Procesamiento Criminal del Departamento de Justicia. En su informe, presentado el 26 de julio de 1995, el Procurador General recomendó que la conducta de los abogados fuera sancionada por este Tribunal. El 22 de septiembre de 1995

ordenamos al Procurador General que radicara la correspondiente querella.

Conforme a lo ordenado, el Procurador General presentó querella el 4 de octubre de 1995, imputándole a ambos abogados haber violado "las disposiciones del Canon 38 de Ética Profesional en cuanto a la obligación que le impone dicho Canon a todo abogado a comportarse digna y honradamente tanto en su vida privada como en el desempeño de su profesión". La querella se fundamentó en la convicción de ambos abogados por el delito de alteración a la paz.

Ambos abogados comparecieron, mediante escrito titulado "Contestación a la querella", exponiendo su versión de los hechos. Señalaron que lo ocurrido fue un "incidente insignificante" que no debe dar lugar a que prevalezca la querella, "como no debió prevalecer la convicción en los cargos de alterar la paz". Conforme a lo alegado, solicitaron que se desestimara la querella.

El 12 de enero de 1996 designamos al Hon. Enrique Rivera Santana, Ex-Juez Superior, como Comisionado Especial para recibir la prueba y someter las recomendaciones correspondientes. La vista ante el Comisionado Especial se celebró el 19 de marzo de 1999. Las partes comparecieron a través de sus sendas representaciones legales y sometieron el caso, mediante estipulación, a base de los expedientes de los casos criminales. De esta forma, quedó estipulado que los testigos que declararon en la acción penal testificarían lo mismo ante el Comisionado Especial en la acción disciplinaria.

Una vez elevados y examinados los expedientes de los casos criminales EMI 93-0173 y EMI 93-0174, <u>Pueblo de Puerto Rico v. José A. de la Texera y José G. Marrero Luna</u>,

incluyendo la transcripción de la prueba, el Comisionado

Especial formuló las siguientes conclusiones de hechos:

El 22 de septiembre de 1992, poco después de las once de la mañana, el periodista del diario El Vocero, José Miguel Rivera Puig, se encontraba desayunando en un negocio conocido como "Happy Bakery", ubicado en la proximidad del Centro Judicial de Aibonito. Estaba sentado en una de las mesas de dicho negocio, cuando observó que entraban al local los licenciados José A. de la Texera Barnés y José G. Marrero Luna. El Lcdo. de la Texera caminó entre las mesas en dirección al lugar en que se encontraba el Sr. Rivera Puig. Aquél (de la Texera) se movía agarrándose una pierna y expresando que tenía dolor en la misma. Al pasar el Lcdo. de la Texera por detrás de la mesa en que estaba Rivera Puig, éste último sintió un golpe en la espalda, lo que provocó que se le cayeran los espejuelos y le cayera encima el café que se estaba bebiendo. Se levantó y se viró hacia el Lcdo. de la Texera, quien se disculpó. Al no recibir respuesta a la disculpa, increpó a Rivera Puig, diciéndole que él (Rivera Puig) que difamaba en El Vocero, que era un "cobarde" y que no le iba a dar. "Tú no me vas a dar", le dijo.

El Sr. Rivera Puig describió como "fuerte" el golpe que recibió. No entendió que fuera un golpe casual porque inmediatamente que el abogado le pidió disculpas le dijo que no le iba a dar y le llamó cobarde. Al oír la expresión del Lcdo. de la Texera de que él (Rivera Puig) era un cobarde y de que no le iba a dar, Rivera Puig se sintió intimidado. Decidió entonces llamar a la policía. Ya en ese momento se había acercado el Lcdo. Marrero Luna y estando este último al lado de Rivera Puig afirmó que "ésta es la nena del Vocero,... el Vocero mandó pa'cá una nena, ésta es la nena del Vocero".

El Sr. Rivera Puig se movió hacia el mostrador del negocio a llamar a la policía. En esa gestión fue auxiliado por la empleada del local, la Sra. Lissette López, quien le marcó el número del teléfono del cuartel. Mientras Rivera Puig llamaba se le acercó el Lcdo. Marrero Luna, en el "mismo patrón" de conducta, reclamándole que no le diera la espalda porque le podía pasar algo.

La Sra. Lissette López había observado, antes de la llamada a la policía, que el Sr. Rivera Puig, en la mesa en que estaba, se había puesto de pie, "sacudió las manos en tono de protesta". Cuando llegó al mostrador tenía la camisa mojada y le indicó a ella "que el señor le había agredido".

El Sr. Rivera Puig regresó a su mesa y los dos abogados se sentaron en otra. Llegaron otras personas al lugar. Cuando los dos abogados se fueron el Sr. Rivera Puig decidió salir para ir a

Fiscalía. Informó de ello a la empleada del negocio, por si llegaba la policía, y le tomó el nombre a ella. Cuando salía del negocio llegaron el sargento Luis F. Miranda y el agente José M. Rodríguez, a quienes les narró lo sucedido: que el Lcdo. de la Texera le había agredido por la espalda, que le había alterado la paz, diciéndole "eres un cobarde", y que el Lcdo. Marrero Luna le dijo "esta es la nena del Vocero, tu [sic] no eres guapo, no me des la espalda que te puede pasar algo". La investigación de la policía se limitó a recibir la información que le dio Rivera Puig y a la declaración que le dio por la tarde la Sra. Lissette López.

Este incidente provocó que el policía Rodríguez presentara denuncias contra ambos abogados por alteración a la paz y por agresión agravada contra de la Texera Barnés. Ambos abogados fueron hallados culpables por el delito de alteración a la paz.

II.

La sección 9 de la Ley del 11 de marzo de 1909, 4 L.P.R.A. § 735, regula el desaforo o suspensión temporal de los abogados al disponer:

El abogado que fuere culpable de engaño, conducta inmoral (malpractice), delito grave (felony) o delito menos grave (misdemeanor), en conexión con el ejercicio de su profesión o que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituido de su profesión por el Tribunal Supremo de Puerto Rico. La persona que siendo abogado fuere convicta de un delito grave cometido en conexión con la práctica de su profesión o que implique depravación moral, cesará convicta que fuere, de ser abogado o de ser competente para la práctica de su profesión. [...].

Sin embargo, reiteradamente hemos explicado que en nuestra jurisdicción la decisión de separar a un abogado del ejercicio de la profesión es facultad inherente de este Tribunal. En el ejercicio de esa facultad podemos ordenar la separación de un abogado por motivos distintos a los que

la Asamblea Legislativa de Puerto Rico ha decretado por ley como causa para el desaforo. En síntesis, la causa de desaforo no tiene que ser necesariamente de origen legislativo. In re Folch Diez, res. el 7 de abril de 2003, 159 D.P.R. __ (2003), 2003 T.S.P.R. 74. También hemos resuelto que podemos ejercer nuestra facultad de desaforo, aun cuando las actuaciones del abogado no estén relacionadas con el ejercicio de su profesión, si se demuestra que su conducta no le hace digno de ser miembro de este Foro. In re Folch Diez, supra. Según reiteramos en In re Peña Peña, "si se demuestra que la conducta del abogado no le hace digno de ser miembro de este foro, podemos ejercer nuestra facultad de desaforo aunque las actuaciones del abogado hayan surgido por causas no relacionadas con el ejercicio de su profesión, pues basta que tales actuaciones afecten las condiciones morales del querellado". In re Peña Peña, res. el 27 de marzo de 2001, __ D.P.R. __ (2001), 2001 T.S.P.R. 49.

El Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 38, dispone:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. [...] Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, **todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.**

Al interpretar este canon hemos señalado que "[c]ada abogado es un espejo en que se refleja la imagen de la profesión. Sus actuaciones reflejan ante la comunidad las bases del concepto que ésta se forme, no solamente del abogado en particular que actúa, sino también de la clase

profesional toda que debe representar con limpieza, lealtad y el más escrupuloso sentido de responsabilidad". <u>In re Ortiz Brunet</u>, 152 D.P.R. 542, 556 (2000). También, hemos enfatizado que "todo abogado habrá de desempeñarse con dignidad y alto sentido del honor, aunque ello implique ciertos sacrificios personales [y]... deberá conducirse en forma digna y honorable, tanto en la vida privada como en el desempeño de su profesión." <u>In re Quiñones Ayala</u>, res. el 30 de junio de 2005, 164 D.P.R. __ (2005), 2005 T.S.P.R. 99.

Además, el Preámbulo del Código de Ética Profesional dispone:

> En Puerto Rico, donde el sistema democrático es fundamental para la vida de la comunidad y donde la fe en la justicia se considera factor determinante en la convivencia social, es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía. [...] En particular, **el logro de estos fines le exige al abogado:** ... (d) Que esté consciente de la importancia de evitar aun la apariencia de conducta impropia. (e) **Que tenga un compromiso solemne e inquebrantable,** no sólo **de conducir su propia persona de acuerdo con los anteriores principios y los que siguen,** sino también de velar porque la conducta de sus compañeros de profesión se rija igualmente por dichas exigencias. 4 L.P.R.A. Ap. IX (énfasis nuestro).

Por otro lado, debemos recordar que "los procedimientos disciplinarios ante este Tribunal son independientes de las acciones legales, ya sean criminales o civiles, que se deriven de la misma relación de hechos". <u>In re Deynes Soto</u>, res. el 23 de marzo de 2005, 163 D.P.R. __ (2005), 2005 T.S.P.R. 40 [enmendada *nunc pro tunc* mediante resolución del 22 de abril de 2005, 2005 T.S.P.R. 51]. Inclusive, el quantum de prueba requerido es diferente, ya que en el proceso disciplinario lo que se requiere es prueba clara, robusta y convincente. <u>In re Deynes Soto</u>, *supra.* Ello quiere decir que la carga probatoria en estos procesos es "más

acuciosa que la mera preponderancia de la prueba toda vez que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento". In re Deynes Soto, *supra*. A la misma vez y contrario a los procesos penales, no se requiere probar la falta más allá de toda duda razonable. Toda esta normativa "responde al hecho de que el procedimiento disciplinario no va dirigido a castigar al querellado por la falta cometida, sino a proteger a la comunidad y a la profesión mediante una investigación de sus condiciones morales para determinar si puede continuar en la práctica profesional". In re Barreto Ríos, res. el 28 de junio de 2002, 157 D.P.R. __ (2002), 2002 T.S.P.R. 89.

## III.

Ahora bien, aunque el proceso disciplinario es independiente del proceso criminal, en el caso de autos se estipuló que los testigos que declararon en el juicio penal testificarían de igual manera en el proceso disciplinario. Es por esto que acogemos las determinaciones de hechos del Comisionado Especial para evaluar la conducta de los abogados Marrero Luna y de la Texera Barnés. Dichas determinaciones están basadas en la transcripción de la regrabación del proceso criminal según aprobada por el Tribunal de Distrito.

Los abogados de la Texera Barnés y Marrero Luna incurrieron en delito menos grave (alteración a la paz) al protagonizar el incidente antes relatado. Dicho incidente no ocurrió en el marco del ejercicio de su profesión. Por lo tanto, no procede la suspensión de los querellados bajo la

sección 9 de la Ley del 11 de marzo de 1909, 4 L.P.R.A. § 735.

Sin embargo, ello no dispone del caso. Según explicamos antes, los principios de ética profesional se extienden a la conducta del abogado fuera del ejercicio de la profesión. In re Peña Peña, supra. Al evaluar el incidente protagonizado por ambos abogados encontramos que éstos violaron el principio establecido en el Canon 38, que impone a todo abogado el deber de preservar el honor y la dignidad de la profesión. In re Barreto Ríos, supra. Por eso, no podemos pasar por alto la conducta de los abogados Marrero Luna y de la Texera Barnés. Ambos demostraron una conducta reprochable, ajena a los altos principios éticos que rigen nuestra profesión, cuyos miembros deben demostrar la mayor rectitud en sus relaciones interpersonales. La conducta amenazadora y desafiante desplegada por los abogados querellados fue una invitación a la violencia y no tiene cabida entre los miembros de la profesión jurídica.

En vista de que los abogados José G. Marrero Luna y José A. de la Texera Barnés actuaron en contravención a los principios éticos que rigen la profesión, ejercemos nuestra facultad inherente para reglamentar el ejercicio de la abogacía y decretamos la suspensión inmediata de ambos abogados del ejercicio de la profesión por el término de un (1) mes y hasta que otra cosa provea este Tribunal.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

José A. de la Texera Barnes          CP-95-15
José G. Marrero Luna

SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2005.

A tenor con la Opinión Per Curiam que antecede, suspendemos a los licenciados José G. Marero Luna y José A. de la Texera Barnés del Ejercicio de la abogacía por el término de un mes y hasta que otra cosa provea este Tribunal.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente, por las razones expresadas en su opinión disidente en <u>In Re: Peña Peña</u>, 2001 JTS 48, acápite II. El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita y la Jueza Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo