per curiam:
Nos corresponde evaluar la procedencia de ciertas alegaciones de conducta impropia contra un abo-gado por supuestas violaciones a los cánones del Código de Etica Profesional al momento de cobrar sus honorarios. Tras analizar detenidamente el asunto, concluimos que la evidencia presentada no cumple con el estándar de prueba clara, robusta y convincente requerido en los procedimien-tos disciplinarios contra abogados para demostrar que en efecto se cometieron las infracciones imputadas. Por lo tanto, ordenamos el archivo de la querella ante nuestra consideración.
*436 I
El Ledo. Hilton García Aguirre fue admitido a la prác-tica de la abogacía y de la notaría en 1985. En 1993 asumió la representación legal del Sr. Sigfrido Rivera Solá en un pleito instado por éste contra el Sr. Prudencio Caldas Lorenzo. Acordaron que sus honorarios serían el 33% de la cantidad total que se recobrara. El señor Rivera Solá pre-valeció en su reclamación y el tribunal le ordenó al señor Caldas-Lorenzo que le pagase $30,739.50. Posteriormente, el señor Rivera Solá llevó a cabo los procedimientos corres-pondientes para asegurar la ejecución de su sentencia. Luego de una subasta, le fue adjudicada una propiedad del señor Caldas Lorenzo por el valor del total de la sentencia. Así las cosas, el 17 de febrero de 1998 se otorgó una escri-tura de venta judicial adjudicando la propiedad al señor Rivera Solá.(1) Ese mismo día, éste y el licenciado García Aguirre llegaron a un acuerdo sobre el pago de los honora-rios de abogado. A tales efectos, otorgaron una escritura de compraventa en la que el señor Rivera Solá traspasó una participación de una tercera parte de la propiedad al licen-ciado García Aguirre por la cantidad de $10,246.(2)
En junio de 1999, el señor Rivera Solá presentó una queja jurada contra el licenciado García Aguirre por su-puestas actuaciones impropias en otro caso de cobro de dinero en el que éste representó al quejoso, quien figuraba como demandado. Dicho caso se presentó luego de otorgada la escritura de compraventa de febrero de 1998 y no estaba relacionado con el caso anterior contra el señor Caldas Lorenzo. En la referida queja, el señor Rivera Solá adujo que el licenciado García Aguirre nunca contestó la de-manda, por lo que se le anotó rebeldía. No obstante, de los *437 documentos que acompañan la queja se desprende que al-rededor de un mes luego de anotada la rebeldía, el señor Rivera Solá satisfizo extrajudicialmente la deuda objeto del pleito, por lo que la otra parte solicitó el archivo con perjuicio de la demanda, y así lo concedió el tribunal. Por su parte, el licenciado García Aguirre expuso que no había contestado la demanda por entender que se trataba de una deuda vencida y garantizada por la cual su cliente tenía que responder. De hecho, el señor Rivera Solá había pa-gado la deuda, por lo que el litigio había terminado.
En su informe inicial referente a la queja, el Procurador General expuso que, a pesar de entender qúe el licenciado García Aguirre debió renunciar a la representación legal si no estaba de acuerdo con su cliente en cuanto a la contes-tación de la demanda, éste no había sufrido daño alguno, por lo que recomendó el archivo de la queja según los he-chos alegados en ésta. Sin embargo, expresó cierta preocu-pación ante el hecho de que el señor Rivera Solá había enviado una carta a su oficina en septiembre de 1999 en la que informó que había presentado una demanda contra el licenciado García Aguirre por incumplimiento de contrato. Los hechos alegados en la demanda se remontaban al otor-gamiento de la escritura de compraventa suscrita en 1998 para satisfacer los honorarios del licenciado García Aguirre. El Procurador General recomendó paralizar el trámite disciplinario hasta tanto se resolviera el pleito judicial, y así lo ordenamos.
Luego de varios años de litigio, en el 2004 el Tribunal de Primera Instancia, Sala de San Sebastián, dictó sentencia y determinó que la intención del señor Rivera Solá al sus-cribir la escritura de compraventa no había sido vender una participación de una tercera parte de la finca, sino garantizar el pago de honorarios de abogado. Según enten-dió el tribunal, al ser la supuesta compraventa realmente una garantía de pago, luego que el señor Rivera Solá pa-gara los honorarios de abogado la participación que había *438 traspasado al licenciado García Aguirre revertiría a él. Por lo tanto, ordenó al señor Rivera Solá a pagar la cantidad de $10,144.03,(3) más intereses calculados desde el 17 de fe-brero de 1998 en concepto de honorarios de abogado. Hizo constar, además, que tan pronto se acreditara dicho pago, emitiría una resolución para ordenar al Registrador de la Propiedad que eliminara la participación del licenciado García Aguirre de los asientos correspondientes al inmue-ble en controversia.
A base de dicha sentencia, el Procurador General pre-sentó una querella contra el licenciado García Aguirre en la que se le imputaron cinco cargos de violaciones a los Cánones 18, 21, 23, 35 y 38 del Código de Ética Profesio-nal, 4 L.P.R.A. Ap. IX. En esencia, dichos cargos se basan en que éste supuestamente promovió un negocio jurídico para su beneficio en detrimento de los intereses y la volun-tad de su cliente, que adquirió un interés en la propiedad adjudicada a favor de su cliente en el litigio civil en el que el querellado lo representó y que realizó un negocio jurídico distinto al acordado, faltando así a los deberes de lealtad y honradez que exige su profesión.
Luego de los trámites procesales de rigor, designamos a la Hon. Eliadís Orsini Zayas, ex Jueza del Tribunal de Pri-mera Instancia, como Comisionada Especial para atender el procedimiento de autos. Tras celebrar la vista correspon-diente evidenciaría, la Comisionada Especial rindió su in-forme y determinó que no se había demostrado, con prueba clara, robusta y convincente, que el licenciado García Aguirre hubiese incurrido en conducta impropia alguna relacio-nada con el negocio jurídico efectuado con el señor Rivera Solá para cobrar sus honorarios de abogado. Por ello, reco- *439 mendó el archivo de la querella y la desestimación de los cargos. Sometido el informe ante nuestra consideración, procedemos a resolverá.(4)
II
 El Código de Ética Profesional recoge las normas mínimas de conducta que rigen a los miembros de la pro-fesión legal y promueven un comportamiento ejemplar por parte de los abogados en el desempeño de su delicada e importante labor. In re Matos González, 149 D.P.R. 817 (1999); In re Filardi Guzmán, 144 D.P.R. 710 (1998).
A estos efectos, el Criterio General de la Parte III {Deberes del abogado para con sus clientes) de dicho Código expone que los abogados le deben a sus clientes un trato profesional caracterizado por la mayor capacidad, lealtad y honradez. Véase, además, In re Meléndez Figueroa, 166 D.P.R. 199 (2005). Ello se debe a que la relación entre un abogado y su cliente se fundamenta en la confianza absoluta que debe existir entre ambos. Robles Sanabria, Ex parte, 133 D.P.R. 739 (1993).
A base de esa confianza absoluta y del deber de lealtad y honradez, el Canon 21 del Código de Ética Profesional, supra, dispone, en lo pertinente, que los abogados deben evitar el asumir o continuar una representación legal cuando su juicio profesional pueda verse afectado por sus intereses personales. El deber de lealtad que impone este precepto requiere que los abogados ejerzan un criterio profesional independiente y desligado de sus intereses personales. In re Rivera Vicente, 172 D.P.R. 349 (2007). Es por esto que los abogados deben evitar situaciones en las que la lealtad completa que deben a sus clientes y a la *440 defensa de sus intereses pudiera resultar incompatible con algún interés propio. In re Sepúlveda Girón, 155 D.P.R. 345 (2001); In re Toro Cubergé, 140 D.P.R. 523, 530 (1996).
Por otro lado, el Canon 23 del Código de Ética Profesional, supra, prohíbe que los abogados adquieran interés o participación alguna en el bien involucrado en el litigio que se le haya encomendado. No obstante, el carácter litigioso del bien tiene que coincidir en tiempo con la intervención del abogado en el pleito relacionado con ese bien. Una vez concluido el litigio, el Canon 23 no impide que, en pago de los honorarios, el abogado adquiera una participación en el bien del cliente. In re Rosado Nieves, 159 D.P.R. 746 (2003); In re Castro Mesa et al., 131 D.P.R. 1037 (1992).
Por su parte, el Canon 35 del Código de Ética Profesional, supra, impone a los abogados un deber general de ser sinceros y honrados para con sus representados y con sus compañeros abogados, así como para con los tribunales. Véanse, además: In re Padilla Rodríguez, 145 D.P.R. 536 (1998); In re Franco Rivera y Masini Soler, 134 D.P.R. 823 (1993). Hemos expresado que “[m]ás que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin la misma, no podría la profesión jurídica justificar su existencia”. (Énfasis suprimido.) In re Martínez, Odell II, 148 D.P.R. 636, 642 (1999).
Asimismo, el Canon 38 del Código de Ética Profesional exige a todo abogado conducirse en forma que exalte la dignidad y el honor de su profesión, no sólo en el desempeño de ésta, sino también en el ámbito de su vida privada. 4 L.P.R.A. Ap. IX. Según el propio canon, ello responde a la confianza depositada en el abogado como miembro de la ilustre profesión legal. In re Sepúlveda, Casiano, 155 D.P.R. 193 (2001). Reiteradamente, al interpretar el referido precepto, hemos expresado que cada abogado es un espejo en el cual se refleja la imagen de la profesión, por *441 lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad y el más escrupuloso sentido de responsabilidad. In re Curras Ortiz, 174 D.P.R. 502 (2008); In re Coll Pujols, 102 D.P.R. 313 (1974).
Por otra parte, es norma establecida que el criterio probatorio que se utilizará en los procedimientos disciplinarios es el de prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas. In re Caratini Alvarado, 153 D.P.R. 575 (2001). Dicho criterio requiere una carga probatoria más fuerte que la mera preponderancia de la prueba, ya que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento. íd. Aunque el referido estándar de prueba no es susceptible de una definición precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en el juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables. In re Ruiz Rivera, 168 D.P.R. 246 (2006); In re Rodríguez Mercado, 165 D.P.R. 630 (2005).
Los procedimientos disciplinarios instados ante este Tribunal son independientes de las acciones civiles o criminales que puedan surgir de los mismos hechos. In re De la Texera Barnes, 165 D.P.R. 526 (2005); In re Deynes Soto, 164 D.P.R. 327 (2005). Ello responde a que se trata de procedimientos que persiguen objetivos distintos, pues el fin del procedimiento disciplinario no es castigar al abogado, sino proteger al público y a la profesión legal mediante una investigación de las condiciones morales del letrado para determinar si puede continuar ejerciendo la abogacía. In re Olivera Mariani, 173 D.P.R. 498 (2008); In re Liceaga, 82 D.P.R. 252 (1961).
Por último, según dispone la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, corresponde al Comisionado Especial designado celebrar una *442 vista para recibir la prueba. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial está en mejor posición para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones tác-ticas merecen nuestra mayor deferencia. In re Morales Soto, 134 D.P.R. 1012 (1994). Por lo tanto, aunque este Tribunal no está obligado a aceptar el informe de un Comi-sionado Especial en un procedimiento disciplinario contra un abogado, sino que podemos adoptar, modificar o recha-zar tal informe, de ordinario sostendremos las determina-ciones de hecho de un Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re Pagán Pagán, 171 D.P.R. 975 (2007); In re Morell, Alcover, 158 D.P.R. 791 (2003); In re Soto López, 135 D.P.R. 642 (1994). Con estos preceptos en mente, atendamos la contro-versia ante nuestra consideración.
III
En primer lugar, debemos aclarar que el Canon 23 del Código de Ética Profesional, supra, no aplica a los hechos imputados al querellado de epígrafe. De los hechos alega-dos en la querella, así como de la sentencia emitida en el pleito original del señor Rivera Solá contra el señor Caldas Lorenzo, surge que el licenciado García Aguirre no adqui-rió interés en un bien objeto de dicho litigio. La propiedad adquirida por el señor Rivera Solá no fue el objeto del pleito, sino el medio de lograr la ejecución de la sentencia. Luego de recaer sentencia a su favor, y ante la imposibili-dad de pago del allí demandado, se llevaron a cabo los pro-cedimientos correspondientes para subastar la propiedad y satisfacer la acreencia del señor Rivera Solá, adjudicándo-sele finalmente la propiedad mediante una escritura de venta judicial. Concluido todo ese proceso, el señor Rivera Solá y el licenciado García Aguirre acordaron el pago de los honorarios con una participación en la propiedad adjudi- *443 cada al señor Rivera Solá. Por lo tanto, el licenciado García Aguirre no adquirió interés en un bien en litigio según lo prohíbe el Canon 23, supra.
Aclarado lo anterior, nos resta determinar si el licen-ciado García Aguirre incurrió en una conducta contraria a los Cánones 18, 21, 35 y 38 del Código de Ética Profesional, supra, los cuales giran en torno a los deberes generales de los abogados de ser leales, sinceros y honestos con sus clientes y evitar el beneficio propio a costa de los intereses de éstos. Al examinar el informe de la Comisionada Especial, así como los autos del caso ventilado ante el Tribunal de Primera Instancia, concluimos que la evidencia presen-tada no demuestra las supuestas violaciones a los cánones de ética profesional imputadas al querellado. Veamos.
La sentencia emitida por el tribunal de instancia en el caso instado por el señor Rivera Solá contra el licenciado García Aguirre fue dictada en un pleito civil, donde el es-tándar probatorio es la preponderancia de la prueba. Como hemos señalado anteriormente, dicho estándar es menos exigente que la prueba clara, robusta y convincente que se requiere en los procedimientos disciplinarios como el de autos. In re Caratini Alvarado, supra; In re Ruiz Rivera, supra; In re Rodríguez Mercado, supra. En el referido pleito, el foro de instancia tuvo ante sí cierta prueba refe-rente a la intención de las partes al suscribir la escritura de compraventa y llegó a sus conclusiones a base de dicha evidencia. Sin embargo, en sus determinaciones de hecho y conclusiones de derecho en ningún momento estableció que la escritura fuese nula ni que el querellado hubiese incu-rrido en conducta impropia alguna para lograr la firma del señor Rivera Solá. Tampoco refirió al licenciado García Aguirre a la atención de este Tribunal para investigar po-sibles violaciones éticas. La sentencia se limitó a reconocer una deuda válida de honorarios de abogado a favor del que-rellado y a determinar que la intención del señor Rivera Solá al suscribir la escritura de compraventa había sido *444 garantizar los honorarios que le adeudaba al licenciado García Aguirre, no ceder el dominio permanentemente.
El foro de instancia expresó también que el consenti-miento del señor Rivera Solá había estado viciado ya que, al no ser abogado, no entendió el alcance del negocio jurí-dico y pensó que tan pronto pagara los honorarios le rever-tiría la propiedad de esa participación. No dispuso que dicho malentendido fuese causado por engaños o maquinaciones del licenciado García Aguirre. Incluso, el tribunal ordenó al señor Rivera Solá que satisficiera la deuda de honorarios de abogado más los intereses acumu-lados desde febrero de 1998 e indicó que, luego de acredi-tarse que así se hiciera, el tribunal expediría un manda-miento al Registrador de la Propiedad para que eliminara la participación del querellado de los asientos corres-pondientes. (5) Por ende, el efecto de dicha sentencia se li-mitó a establecer que, a base de la prueba presentada y analizada bajo un criterio menos riguroso que el que aplica en el procedimiento de autos, el tribunal de instancia con-cluyó que la intención del señor Rivera Solá al suscribir la escritura de compraventa era garantizar los honorarios adeudados, no vender una tercera parte de la propiedad al licenciado García Aguirre.
Por otro lado, en las vistas evidenciarlas celebradas ante la Comisionada Especial designada, el Procurador General no presentó prueba testifical ni documental al-guna más allá del expediente del caso ante el foro de ins-tancia del cual la Comisionada Especial tomó conocimiento judicial. Por su parte, el licenciado García Aguirre presentó *445 varios testigos. El primer testigo citado y llamado a decla-rar por el querellado fue el propio señor Rivera Solá, quien no compareció a las vistas celebradas, por lo que el quere-llado no tuvo la oportunidad de confrontarlo durante el proceso. Dada su incomparecencia injustificada,(6) la Comi-sionada Especial determinó que de haber comparecido su testimonio le hubiese resultado adverso, a los efectos de que el negocio jurídico realizado entre él y el licenciado García Aguirre había sido válido y voluntario, y que éste no lo había engañado ni actuado impropiamente.
Así, pues, el próximo testigo fue el Ledo. José Manuel Cruz Ellis, quien fue el notario que autorizó las escrituras de venta judicial y compraventa el 17 de febrero de 1998. Este testificó sobre el conocimiento, consentimiento y libe-ralidad de las partes al otorgar la escritura de compraventa. Luego se presentó el testimonio del Ledo. Ángel Roberto Cardona Ubiñas, quien fue el abogado del licenciado García Aguirre en el pleito llevado en su contra en el tribunal de instancia, y declaró sobre la buena repu-tación profesional del querellado. También se interrogó al Sr. José Hernández Valentín, quien declaró sobre la buena reputación del querellado en la comunidad en que reside, así como la mala reputación del señor Rivera Solá, a quien supuestamente se le considera una persona deshonesta. Por último, el propio licenciado García Aguirre declaró su versión de los hechos y sobre la validez del negocio jurídico celebrado.
Lo cierto es que el señor Rivera Solá presentó la queja contra el licenciado García Aguirre en junio de 1999 y luego envió una carta en septiembre del mismo año a la *446 Oficina del Procurador General.(7) Cabe señalar que dicha carta, en la que por primera vez se hace referencia a los hechos que dieron lugar al inicio de la presente acción dis-ciplinaria, no fue jurada por el señor Rivera Solá. Después de esa carta de septiembre de 1999, el señor Rivera Solá no tuvo ningún otro contacto con la Oficina del Procurador General. Nunca se le entrevistó ni se le tomó una declara-ción jurada sobre los hechos que dieron base a su queja ni se realizó gestión investigativa alguna más allá de adoptar lo resuelto en el caso civil que instó el señor Rivera Solá contra el querellado. Tampoco fue citado por el Procurador General para ofrecer su testimonio en la vista evidenciaría celebrada en el procedimiento de epígrafe. La citación se expidió a instancias del querellado, quien en todo momento expresó su intención de interrogarlo en la vista.
Como es sabido, en los procedimientos disciplinarios el querellado tiene derecho a la celebración de una vista evidenciaría, a confrontar y contrainterrogar los testigos en su contra, a examinar la prueba documental y material, y a presentar evidencia testifical, documental y material a su favor. Regla 14(h), (i) y (j) del Reglamento del Tribunal Supremo, supra. En los procedimientos celebrados en el caso de epígrafe, el licenciado García Aguirre solicitó ejercer su derecho a confrontar y contrainterrogar al señor Rivera Solá, quien instó la presente acción disciplinaria en su contra. Sin embargo, éste no demostró interés alguno en el proceso ni compareció a ofrecer su testimonio. Por su parte, el Procurador General descansó enteramente en la sentencia emitida por el Tribunal de Primera Instancia en el caso civil anterior, no tomó declaraciones juradas ni realizó entrevistas. Tampoco presentó prueba alguna de las supuestas violaciones cometidas por el querellado.
*447 Ante la ausencia de prueba en el presente procedi-miento disciplinario, y en consideración de la prueba ofre-cida por el licenciado García Aguirre en la vista y la que obra en el expediente, concluimos que no existe prueba clara, robusta y convincente de que el licenciado García Aguirre hubiese faltado a los deberes de lealtad, sinceridad y honradez, según lo disponen los cánones de ética profesional. Tampoco quedó demostrado que las actuacio-nes del licenciado García Aguirre atentaran contra el honor y la dignidad de la profesión que ejerce. Por consi-guiente, ordenamos el archivo de la querella ante nuestra consideración.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez disintió sin opinión escrita.

 Escritura Número 5 de 17 de febrero de 1998, autorizada por el notario José M. Cruz Ellis.

 Escritura Número 6 de 17 de febrero de 1998, autorizada por el notario José M. Cruz Ellis.

 Según mencionamos anteriormente, los honorarios que las partes habían pactado en el pleito contra el señor Caldas Lorenzo eran 33% de la cantidad que se recobrara mediante sentencia. Existe una discrepancia en las cantidades, ya que la escritura de compraventa contiene la cantidad de $10,246 (equivalente a una tercera parte de $30,739). La cantidad correcta es la indicada por el tribunal de instancia en su sentencia ($10,144.03, que corresponde al 33% de $30,739.50).

 En cuanto a las imputaciones originales de la queja presentada por el señor Rivera Solá relacionada con la demanda de cobro de dinero, éstas quedaron archiva-das y no formaron parte de la querella presentada ni de los procedimientos ante la Comisionada Especial.

 Cabe señalar que el Tribunal de Primera Instancia emitió la sentencia en el 2004. Al momento de celebrar la vista en su fondo en el procedimiento de epígrafe, en el 2008, el señor Rivera Solá no había realizado pago alguno a favor del licenciado García Aguirre, por lo que éste retenía al momento su participación en el inmueble. El querellado tampoco había requerido el pago de las cantidades adeudadas. Es decir, aun cuando el objetivo del señor Rivera Solá a través de la presentación de la demanda era presuntamente recuperar la participación del licenciado García Aguirre, y estando enteramente en su poder hacerlo mediante el pago de la cantidad dispuesta en la sentencia, no había hecho las gestiones para recuperar su propiedad.

 Los abogados del señor Rivera Solá enviaron, casi una semana después de concluidas las vistas, una carta a la Comisionada Especial solicitando que se le excusara por su incomparecencia, debido a una alegada condición médica. No obs-tante, la Comisionada Especial determinó que, en vista de las circunstancias que rodearon la incomparecencia del señor Rivera Solá y dado que el caso había quedado sometido varios días antes, la comunicación resultaba ineficaz.

 Nos llama la atención el hecho de que en la queja presentada en junio de 1999 —que no se relaciona con los hechos que originaron el procedimiento de autos— no se menciona absolutamente nada sobre los hechos en que se basa la demanda presentada por el señor Rivera Solá unas escasas dos semanas más tarde.