EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Manuel Acevedo Hernández | 2015 TSPR 167<br><br>193 DPR ____ |

Número del Caso: AD-2014-1
                 AD-2014-2

Fecha: 14 de diciembre de 2015


Abogados del Querellado:

        Lcdo. Joseph Laws Delgado
        Lcda. Melanie Matos Cardona


Oficina de Asuntos Legales
Oficina de Administración
De los Tribunales:

        Lcda. Cristina Guerra Cáceres, Directora
        Lcdo. Felix Fumero Pugleisi
        Lcdo. Eric J. Salas López
        Lcda. Rosa M. Cruz-Niemiec

Comisión de Disciplina Judicial:

        Hon. Aida N. Molinary de la Cruz, Presidenta
        Lcda. Evelyn Benvenuti
        Lcda. Lourdes Velázquez Cajigas
        Sra. Eneida Sierra Corredor



Materia: Acción Disciplinaria – Destitución de cargo de Juez
Superior por violación a los Cánones 1, 2, 8, 11, 12 14, 20, 23,
30 35 y 36 de Ética Judicial; Suspensión indefinida de la
abogacía.


Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del
proceso de compilación y publicación oficial de las decisiones
del Tribunal. Su distribución electrónica se hace como un
servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

|                          | AD-2014-1 |
| Manuel Acevedo Hernández | AD-2014-2 |

PER CURIAM

San Juan, Puerto Rico, a 14 de diciembre de 2015.

Hoy nos corresponde adoptar otra acción dirigida a fortalecer la política institucional de cero tolerancia a cualquier conducta que pueda lacerar la confianza de la ciudadanía en su sistema de justicia. Nos enfrentamos a la primera vez que un juez es procesado criminalmente por ser parte de un esquema para beneficiar a un acusado a cambio de recibir bienes y servicios, aparte de incurrir en acciones adicionales que mancillan la imagen de todo el capital humano de la Rama Judicial.

El juez o jueza es un funcionario público al servicio de la ciudadanía, no al suyo propio. Su función principal es servir como garante de la administración de la justicia de forma ecuánime y objetiva, guiado siempre por los postulados de la ley, el orden y la moral. Como tal, debe ser independiente y autónomo. Tal oficio requiere de una acción íntegra y libre de avaricia, capaz de anteponer la verdadera Justicia sobre sí mismo.

Desdichadamente, hoy procede destituir a uno de los miembros de la Judicatura por sus actuaciones como magistrado. Los hechos de este caso ejemplifican el tipo de conducta que no representa los valores éticos de los integrantes de nuestra Rama Judicial. Nos encontramos ante el lamentable escenario en que un juez actuó mediando corrupción judicial. Tal realidad requiere que este Tribunal actúe con firmeza salvaguardando el pilar de nuestro sistema de justicia: la confianza depositada en nosotros.

I

Los hechos que originan las querellas presentadas se relacionan con las acciones y conducta del Juez Manuel Acevedo Hernández (Juez Acevedo Hernández) vinculados al caso criminal por homicidio negligente, obstrucción a la justicia y conducir en estado de embriaguez que se ventiló contra el Sr. Lutgardo Acevedo López (Acevedo López). El Juez Acevedo Hernández emitió las sentencias absolutorias en el referido caso el 27 de marzo de 2013.

A tan sólo nueve días del fallo absolutorio, el 5 de abril de 2013, agentes de la Policía de Puerto Rico intervinieron con un vehículo conducido por un empleado y gestor del señor Acevedo López, el Sr. Ángel Román Badillo (Román Badillo), por conducir a exceso de velocidad y bajo los efectos de bebidas embriagantes. El Juez Acevedo Hernández se encontraba como pasajero del señor Román Badillo durante la intervención. Así las

cosas, el Juez Acevedo Hernández se identificó como juez y cuestionó los motivos de la detención del señor Román Badillo. Igualmente, realizó un acercamiento al Agte. Emanuel Lorenzo Ramírez con el fin de solicitar que el señor Román Badillo no fuera denunciado por conducir a exceso de velocidad y bajo los efectos de bebidas embriagantes. Así, insistió en hablar con la persona encargada para canalizar su petición.

Posteriormente, el 14 de abril de 2014, las autoridades federales diligenciaron una orden de allanamiento en la residencia del Juez Acevedo Hernández. En esa misma fecha, se ordenó el inicio de una investigación disciplinaria en cuanto al diligenciamiento de la orden de allanamiento y se suspendió temporeramente de sus funciones con paga al Juez Acevedo Hernández en lo que concluía la investigación de rigor.

Paralelamente, la Directora de la Oficina de Administración de los Tribunales (Directora de la OAT) refirió para investigación lo concerniente al incidente ocurrido el 5 de abril de 2013. Asimismo, la Sra. Lesly Pérez Rodríguez (Pérez Rodríguez) presentó una queja en la que señaló irregularidades relacionadas con el proceso judicial por la muerte de su cónyuge, que fue presidido por el Juez Acevedo Hernández contra el señor Acevedo López. De igual forma, la señora Pérez Rodríguez cuestionó la relación del Juez Acevedo Hernández con el imputado de delito.

Ante la gravedad de las imputaciones, se procedió con el proceso disciplinario y la correspondiente notificación al Juez Acevedo Hernández, quien contestó las quejas mediante misiva fechada el 7 de mayo de 2014. Éste indicó que el expediente del caso criminal reflejaba que el Ministerio Público no probó los cargos imputados contra el señor Acevedo López. En cuanto a los hechos relacionados al incidente del 5 de abril de 2013, manifestó que desconocía si el señor Román Badillo era agente y empleado del señor Acevedo López. Relató que el señor Román Badillo le ofreció transporte a San Juan, debido a que su vehículo tenía desperfectos. Asimismo, expresó que agentes del orden público le indicaron que permaneciera en el vehículo y que luego de terminado el proceso reanudaron su viaje a Aguadilla.

Durante la investigación del proceso disciplinario, el 28 de mayo de 2014, un Gran Jurado Federal emitió un pliego acusatorio contra el Juez Acevedo Hernández, el señor Acevedo López y el señor Román Badillo por los delitos de conspiración y soborno con el fin de lograr un trato favorable y/o de absolución del señor Acevedo López en un procedimiento judicial presidido por el Juez Acevedo Hernández. Ello, a cambio de bienes y/o pagos realizados a su persona. Al día siguiente, el Juez Acevedo Hernández fue arrestado.

Como consecuencia de tal suceso, la investigación disciplinaria fue ampliada en coordinación con la

Fiscalía Federal. Eventualmente, se presentaron dos informes de investigación fechados el 25 de junio de 2014 y el 11 de septiembre del mismo año.

En el Primer Informe de Investigación se atendió lo relacionado al incidente del 5 de abril de 2013. En éste, se indicó que la prueba recopilada demuestra que el Juez Acevedo Hernández hizo un acercamiento indebido al Agte. Emanuel Lorenzo Ramírez tras la intervención con el señor Román Badillo. Particularmente, al identificarse como juez, al solicitar que el señor Román Badillo no fuera denunciado por conducir a exceso de velocidad y bajo los efectos de bebidas embriagantes, e insistir en hablar con la persona a cargo para canalizar su petición. Por tanto, se concluyó que el Juez Acevedo Hernández incurrió en conducta impropia y contraria a las normas éticas que rigen la función de un juez. Específicamente, se le imputaron violaciones a los Cánones 1, 23 y 30 de los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, y transgresión al Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

El Segundo Informe de Investigación consideró el arresto del Juez Acevedo Hernández por las autoridades federales. En resumen, se señaló que la investigación arrojó que el magistrado conspiró para lograr un trato favorable y/o absolución del señor Acevedo López en el asunto criminal ante su sala a cambio de bienes y/o pagos a su favor. Ante ello, indicó que proceden acciones

disciplinarias adicionales por conducta reñida con los Cánones 1, 2, 8, 11, 12, 14, 20, 23, 35 y 36 de los de Ética Judicial, 4 LPRA Ap. IV-B, y los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Tras los trámites de rigor, el 7 de julio de 2014 se emitió una determinación de causa para presentar la querella por las violaciones desglosadas en el Primer Informe de Investigación. De igual forma ocurrió en septiembre de 2014, con relación al Segundo Informe de Investigación. En ésta última, y debido a la naturaleza de los cargos y conducta imputada que culminó con el arresto del Juez Acevedo Hernández, como medida adicional se recomendó la suspensión del salario del magistrado hasta la disposición final de la querella. Este Tribunal no vaciló en acoger la recomendación, y procedió a ordenar la suspensión inmediata del salario del Juez Acevedo Hernández hasta que concluyera el procedimiento disciplinario. *Véase* In re Acevedo Hernández, 191 DPR 663 (2014).[1]

Acto seguido, este Tribunal ordenó presentar las querellas correspondientes ante la Comisión de Disciplina Judicial (Comisión). La Querella AD-2014-1 está

---

[1]Es importante recalcar que, en asuntos que involucran imputaciones de corrupción en el ámbito del ejercicio de la función judicial, es imperativo que este Tribunal ejerza su poder disciplinario con la mayor premura, diligencia y rapidez posible. Esto, dado que, mientras más tiempo transcurre entre la infracción y la acción, más se mancilla, irremisiblemente, la figura del

relacionada con el incidente del 5 de abril de 2013 y la Querella AD-2014-2 concierne los hechos que dieron lugar al eventual arresto del magistrado por las autoridades federales. Ambas querellas fueron debidamente notificadas al Juez Acevedo Hernández. Los cargos presentados son los siguientes:

**Querella AD-2014-1:**

**Primer Cargo:** El Hon. Manuel Acevedo Hernández incurrió en conducta impropia e incompatible con los deberes y responsabilidades del cargo judicial que ostenta, al hacer referencia a su posición en la Judicatura y solicitarle al oficial de la Policía de Puerto Rico un trato favorable hacia un tercero, quien fue detenido por conducir un vehículo de motor a exceso de velocidad y bajo los efectos de bebidas embriagantes. Al así actuar, el juez utilizó el prestigio y la confianza que le confiere el cargo judicial para influir en el ánimo de un oficial del orden público con el fin de que no se sometiera al detenido al procedimiento de rigor como consecuencia de su infracción a la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, según enmendada, infringiendo así los Cánones 1, 23 y 30 de Ética Judicial, además, del Canon 38 de Ética Profesional.

**Segundo Cargo:** El Hon. Manuel Acevedo Hernández exhibió, el 5 de abril de 2013, conducta contraria a las normas éticas que requieren que sus actuaciones promuevan la confianza en el sistema judicial del País, además, honren y exalten la integridad de su profesión. Al viajar como pasajero en un vehículo que iba conducido a exceso de velocidad por un gestor o empleado del Sr. Lutgardo Acevedo López, a los nueve (9) días de haber absuelto a este último tras presidir un procedimiento criminal en su contra, el juez Acevedo hizo total abstracción de tales deberes. Su proceder arroj[ó] dudas sobre su

_____
juez razonable, ecuánime, honesto e imparcial en la que se cimenta nuestro sistema de justicia.

capacidad para haber adjudicado el caso contra el señor Acevedo López con [parcialidad] -y constituyó una crasa imprudencia, tanto en el ámbito de su vida privada, como en el profesional, en contravención a lo dispuesto en el Canon 23 de Ética Judicial y 38 de Ética Profesional.

**Querella AD-2014-2:**

**Primer Cargo:** El Hon. Manuel Acevedo Hernández comprometió su criterio e independencia, tras acordar, solicitar y aceptar dinero, favores bienes y/o servicios para sí y sus familiares a través del Sr. Ángel Román Badillo, intermediario del Sr. Lutgardo Acevedo López, en el entendido de que tal remuneración habría de influir en el descargo de sus funciones. En tales circunstancias, el Juez evadió su responsabilidad de respetar y adherirse fielmente a las leyes y a los Cánones, al utilizar el prestigio y la autoridad que le confiere el cargo judicial para su beneficio personal a cambio de proveerle un trato favorable al acusado Acevedo López. Con su proceder, el Querellado laceró y menoscabó los principios cardinales de la independencia judicial, pilar fundamental de nuestra sociedad democrática, así como la confianza en la administración de la justicia y el honor de la profesión legal. De esa forma, infringió los Cánones 1, 2, 8, 11, 12, 14, 20, 23, 35 y 36 de Ética Judicial, así como los Cánones 35 y 38 de Ética Profesional.

**Segundo Cargo:** El Querellado lesionó la imagen de la Rama Judicial tras aceptar dinero, favores, bienes, regalos y/o servicios para sí y/o sus familiares a través de Román Badillo, intermediario de Acevedo López, irrespectivo de si dicho acuerdo influyera o no en sus determinaciones judiciales. Al así hacerlo, el Querellado infringió los Cánones 1, 23, 35, y 36 de Ética Judicial.

**Tercer Cargo:** El Querellado lesionó la imagen de la Rama Judicial y socavó la integridad e imagen de la Judicatura al sostener comunicaciones *ex parte* con Román Badillo como intermediario de Acevedo López y/o con Acevedo López u otros terceros que participaron en el acuerdo para lograr un

> trato preferente y/o una determinación favorable para Acevedo López en el caso criminal que estaba ante la consideración del Querellado, en contravención al Canon 12 de Ética Judicial.
>
> **Cuarto Cargo:** Las actuaciones y el comportamiento público del Querellado, al dar la impresión de haber comprometido su imparcialidad y haber utilizado el prestigio que le confiere el cargo para su beneficio personal, lesionaron la imagen de la Rama Judicial y socavaron la imagen pública de la Judicatura en contravención a los Cánones 1, 14 y 23 de Ética Judicial.

En respuesta, el Juez Acevedo Hernández solicitó la paralización del procedimiento disciplinario. Fundamentó su petición en que tales hechos estaban ventilándose ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico. La Directora de la OAT se opuso enérgicamente por entender que el proceso disciplinario es independiente del proceso criminal.

Ponderadas las posturas de las partes, la Comisión ordenó al Juez Acevedo Hernández contestar las querellas. Al así proceder, **advirtió al togado que no hacerlo equivaldría a su anuencia a continuar el proceso sin el beneficio de su comparecencia.**

Tras varios trámites incidentales, el Juez Acevedo Hernández contestó la Querella AD-2014-1. Específicamente, indicó que su intervención durante la detención del señor Román Badillo se limitó a preguntar por qué se había detenido a la persona, ya que no pensó que estuviera conduciendo en estado de embriaguez. En cuanto a la Querella AD-2014-2, el togado declinó

contestarla por entender que estaba ligada a los procesos criminales en su contra. Luego, el 3 de noviembre de 2014, las Querellas fueron consolidadas.

La Comisión reiteró que continuaría con los procedimientos y pautó una vista evidenciaria. No obstante, los procesos fueron pospuestos por razón de que coincidían con el juicio criminal ante el foro federal. En el ínterin, el 20 de enero de 2015 el Juez Acevedo Hernández fue encontrado culpable de los delitos de soborno y conspiración por el foro federal. Finalizado el proceso federal, la Comisión señaló una vista sobre el estado de los procedimientos.

Por su parte, la Directora de la OAT compareció ante la Comisión y solicitó la separación inmediata del Juez Acevedo Hernández de la profesión de abogado, así como su destitución como juez. Expuso que se podía disponer del asunto sin necesidad de trámite ulterior. Ello, pues la convicción es por delitos que implican depravación moral y lesionan la imagen de la Judicatura y la confianza del público general. La Directora de la OAT manifestó que la prueba desfilada demostró, con un *quantum* de prueba mayor, que el Juez Acevedo Hernández comprometió su independencia judicial al aceptar favores, cenas, regalos y servicios con el entendido de que ello influiría en la determinación del juicio que presidía en contra del señor Acevedo López, a tal grado que le solicitó sus influencias para lograr ser nombrado

como Juez del Tribunal de Apelaciones. A su vez, solicitó que se enmendara la Querella AD-2014-2 para incluir un cargo adicional relacionado con la convicción del magistrado. Acompañó con su solicitud el veredicto de culpabilidad y transcripciones de los testimonios vertidos en el foro federal.

A días de la vista señalada por la Comisión, el Juez Acevedo Hernández solicitó que se le permitiera contratar nueva representación legal. Expresó que no deseaba comparecer hasta agotar los remedios legales y procedimientos apelativos en el caso criminal ante el foro federal. La Comisión no suspendió la vista señalada y atendió los planteamientos de las partes.

A la vista señalada comparecieron todas las partes debidamente representadas. Tras escuchar las posturas de éstas, la Comisión decidió declarar no ha lugar la solicitud de renuncia de representación legal. Además, ordenó a las partes mostrar causa por la cual no debía acogerse la solicitud de la Directora de la OAT para disponer del caso con la prueba presentada, señaló la correspondiente vista evidenciaria y permitió incluir el cargo adicional a la querella. Éste lee como sigue:

### Quinto Cargo:

El 20 de enero de 2015, un Jurado Federal emitió un veredicto de culpabilidad contra el Querellado tras encontrar probada la comisión de los delitos de conspiración y soborno; ello, al Querellado solicitar, aceptar y recibir beneficios, favores y regalos a cambio de beneficiar a Acevedo López en el juicio

criminal que presidió. Tal convicción lesiona la imagen de la Rama Judicial, mancilla la estima pública en la Judicatura y refleja claramente que el Querellado hizo total abstracción de los objetivos consagrados en los Cánones de Ética Judicial a los efectos de que los jueces y juezas no están por encima de la ley y son los primeros llamados a respetarla y cumplirla. De esta forma, el Querellado infringió los Cánones 1 y 23 de los de Ética Judicial, así como los Cánones 35 y 38 de Ética Profesional.

En cumplimiento con la orden, el Juez Acevedo Hernández no disputó el hecho de que recayó un veredicto de culpabilidad por los delitos de conspiración y soborno. En consecuencia, manifestó que procedía su suspensión provisional de la abogacía hasta tanto la sentencia fuere final y firme. Empero, se opuso a que las transcripciones de los procesos ante el foro federal se acogieran como prueba.

Entrabada la controversia, y conforme surge de la *Minuta* de los procedimientos, el Juez Acevedo Hernández se allanó a que procedía la suspensión de la abogacía por razón del delito por el cual fue hallado culpable y, además, manifestó que no tenía reparo a la admisibilidad de documentos, siempre y cuando se presentara la totalidad de la transcripción del juicio criminal. Así las cosas, la Comisión señaló fecha para la celebración de la vista evidenciaria, ordenó la presentación de la totalidad de la transcripción del juicio llevado a cabo en el foro federal y concedió un término para que las partes se expresaran en torno a ésta. Transcurrido ese

plazo, se entendería el caso sometido para su disposición final.

Las partes cumplieron con lo ordenado. En lo pertinente, el Juez Acevedo Hernández expresó que los delitos graves por los cuales fue convicto "son causa para que se le suspenda provisionalmente de la abogacía"[2] y solicitó que el procedimiento se disponga a base de ello. En cuanto a las transcripciones presentadas, el querellado manifestó que la "Comisión puede estudiarlos y tomar la decisión que entienda procedente".[3]

Posteriormente, en el mes de junio de 2015, se dictó la sentencia criminal por el foro federal imponiéndole al Juez Acevedo Hernández pena de reclusión de 5 años por el delito de conspiración y 10 años por el de aceptar soborno.[4] Luego de su excarcelación, estará en libertad supervisada por un periodo de 3 años por cada cargo. Todas las penas deberán ser cumplidas concurrentemente. Asimismo, se le impusieron 240 horas

---

[2] Véase, *Moción en Cumplimiento de Orden* de 12 de junio de 2015.

[3] Íd.

[4] Por su parte, el señor Román Badillo llegó a un acuerdo con la fiscalía federal para colaborar con su testimonio, por lo que se declaró culpable de los cargos de conspiración y soborno que le fueron imputados con el fin de reducir la pena que le sería impuesta. Asimismo, el señor Acevedo López se declaró culpable ante el foro federal tras aceptar que pagó más de $50,000, hizo regalos y favores al Juez Acevedo Hernández a cambio de

de servicio comunitario y se le ordenó pagar una pena de $100 por cada cargo.

Finalmente, el 21 de julio de 2015, la Comisión rindió su informe, el cual advino final. En éste, señaló que la prueba presentada, a la que no se opuso el Juez Acevedo Hernández, demuestra que aceptó regalos, cenas, bebidas, servicios de transportación, pagos de deudas contributivas con el Departamento de Hacienda, mejoras a un garaje de su residencia, ropa, yuntas, relojes, motora y otros objetos de valor, de parte del señor Acevedo López por conducto de su intermediario, el señor Román Badillo. Para ello, el señor Román Badillo utilizaba el dinero que el señor Acevedo López le depositaba en sus cuentas bancarias. Tales actuaciones fueron parte de un esquema para que el Juez Acevedo Hernández emitiera una determinación favorable al señor Acevedo López en el caso criminal en su contra que el magistrado presidía.

La Comisión expuso que los testimonios vertidos en el juicio federal demuestran que el Juez Acevedo Hernández aceptó ofrecer un trato favorable al señor Acevedo López a cambio de lograr un ascenso como Juez del Tribunal de Apelaciones y conseguir trabajo para su hermano y un sobrino en dependencias gubernamentales. Como parte del esquema, el Juez Acevedo Hernández revisó

_____

que lo absolviera del caso criminal que el magistrado presidía en su contra.

borradores de mociones a ser presentadas en la defensa del señor Acevedo López, visitó el lugar donde ocurrió el accidente e hizo recomendaciones en cuanto a la estrategia de litigo a favor del acusado.[5]

De igual forma, la Comisión enfatizó que no existe duda de que el señor Román Badillo le brindó servicio de transportación al Juez Acevedo Hernández a pocos días de que éste emitiera el veredicto de no culpabilidad a favor del señor Acevedo López. Durante ese trayecto, agentes del orden público detuvieron al señor Román Badillo por conducir a exceso de velocidad y en aparente estado de embriaguez. Durante la detención, el Juez Acevedo Hernández intentó intervenir con el propósito de disuadir para que no se presentara una acusación de delito contra el señor Román Badillo.

A la luz de tales determinaciones, la Comisión recomendó la destitución del Juez Acevedo Hernández. Sin embargo, entendió que para la imposición de medidas disciplinarias por violación a la ley, los Cánones de Ética Judicial y los Cánones del Código de Ética Profesional, o a la reglamentación administrativa, debe haber una determinación final por un foro competente. La Comisión expone que, en los casos en que haya una convicción, lo ideal sería esperar que la sentencia

---

[5]Parte de las acciones que hizo el Juez Acevedo Hernández consisten en recomendar la contratación de un perito, verificar informes de llamadas y solicitar la devolución del vehículo confiscado.

impuesta sea final y firme antes de proceder a la destitución del magistrado.

No obstante, la Comisión reconoce que las reglas de disciplina judicial no contienen una disposición a estos efectos y tampoco existe un estatuto que ordene la destitución del magistrado. Ello, a diferencia de lo que ocurre en los casos del desaforo o suspensión de un abogado o abogada. De esta manera considera que, para imponer una medida disciplinaria definitiva, como consecuencia de la convicción a nivel federal, sería conveniente esperar a que concluya el trámite apelativo para que la sentencia advenga final y firme.

Examinemos, en primer término, si la acción disciplinaria que nos ocupa amerita supeditarse a los procesos ajenos a nuestra Rama.

II

La Constitución de Puerto Rico, Art. V, Sec. 11, Const. de Puerto Rico, LPRA, Tomo 1, confiere autoridad exclusiva a este Tribunal para atender procedimientos disciplinarios relacionados con los jueces y juezas del Tribunal de Primera Instancia y del Tribunal de Apelaciones. Esta facultad debe ser ejercitada siempre con gran celo. In re Cancio González, 190 DPR 290, 298 (2012). Para llevar a cabo esa función, aprobamos los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, que dirigen la conducta de los jueces y juezas del Sistema Judicial. In re Quiñones Artau, res. 29 de junio de 2015, 2015

TSPR 84, 193 DPR ___(2015). Éstos constituyen unas normas mínimas de conducta que rigen la Judicatura. In re Birriel Cardona, 184 DPR 301, 306-307 (2012); In re Claverol Siaca, 175 DPR 177, 188 (2009).

Desde su preámbulo, los Cánones de Ética Judicial reconocen la importancia de la función judicial y obligan a los jueces y juezas al compromiso y responsabilidad de imponerse restricciones a su conducta, tanto en la esfera de sus funciones judiciales como en otras actividades profesionales y personales. Íd.; In re Berríos Jiménez, 180 DPR 474 (2010); In re Nevárez Zavala, 123 DPR 511, 524 (1989). Así, la vida jurídica es una de sacrificios tanto en la esfera pública como la privada de forma tal que se enaltezca la integridad e independencia de la Judicatura.

La disposición para ocupar el cargo de juez o jueza exige que tal conducta sea una ejemplar en todo momento, dentro y fuera del tribunal. La importancia de ello estriba en que "el comportamiento de los miembros de la Judicatura constituye uno de los pilares en los que se cimenta el Sistema Judicial. Por ello, se exige una conducta intachable para que éstos sirvan de ejemplo y fomenten el respeto y la confianza del Pueblo en el Sistema Judicial". In re Cancio González, supra, pág. 297. Ante tal realidad, hemos advertido que los jueces y juezas deben conducirse éticamente tanto en el ejercicio de las prerrogativas de sus cargos como en sus vidas

privadas. In re Ramos Mercado, 170 DPR 363, 392 (2007) citando a In re González Acevedo, 165 DPR 81 (2005); In re Ortiz Rivera, 163 DPR 530 (2004). Ello también cobija la apariencia de la conducta del juez o jueza, quien no tan sólo debe ser íntegro, sino que también debe parecerlo para evitar que se susciten legítimas dudas de cómo cumple su servicio judicial. In re Ramos Mercado, supra, págs. 392-393 citando a la Exposición de Motivos, Código Modelo Iberoamericano de Ética Judicial, Cumbre Judicial Iberoamericana, 2006, pág. 3 (http://www.jusformosa.gov.ar/info/codiberoamericano2008.pdf).

El cargo de juez o jueza de la Rama Judicial es uno de loable envergadura. De esta forma, quien lo ostenta debe cumplir y representar altos valores éticos, pues su función consiste en proteger los derechos de los ciudadanos. Su hábito debe ser uno intachable que sirva de ejemplo y fomente el respeto y la confianza del pueblo en el Sistema Judicial. In re Claverol Siaca, supra, pág. 188. Es la confianza de los ciudadanos lo realmente esencial para el funcionamiento y la efectividad de los tribunales, porque es el respeto que la gente tenga a las instituciones judiciales lo que brinda a éstas fuerza y autoridad. Cualquier conducta que pueda lacerar la credibilidad que existe sobre el Poder Judicial marchita y empaña la investidura de

aquellos y aquellas que honran día a día los postulados de la independencia judicial.

Cónsono con ello, la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003 (4 LPRA sec. 24 *et seq.*) dispone en su Art. 6.001 las medidas disciplinarias a las que están sujetos los miembros de la Judicatura cuando incurran en violaciones a la ley, a los Cánones de Ética Judicial, a los Cánones del Código de Ética Profesional o a la reglamentación administrativa aplicable, o cuando éste o ésta manifieste negligencia crasa, inhabilidad o incompetencia profesional en el desempeño de sus deberes judiciales. 4 LPRA sec. 25i. Entre las medidas disciplinarias a imponerse, la Ley Núm. 201 destaca la destitución del cargo, la suspensión de empleo y sueldo, limitaciones al ejercicio de la abogacía, incluyendo el desaforo, la censura, amonestación y cualquier otra medida remediativa. 24 LPRA sec. 25j.

En aras de implementar el proceso disciplinario contra jueces o juezas se aprobaron las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B. Este cuerpo normativo dispone el proceso a seguir concerniente a la acción disciplinaria de alguno de los miembros de la Rama Judicial garantizando a la ciudadanía y a la judicatura la justa y pronta consideración de todo asunto presentado y el debido proceso de ley. 4 LPRA Ap. XV-B, R. 2.

En apretada síntesis, el proceso disciplinario comienza con la presentación de una queja juramentada ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales o a iniciativa del Juez Presidente o Jueza Presidenta, un Juez Asociado o Jueza Asociada, el Director o Directora de la OAT.[6] Luego, y de entenderlo necesario, procede una investigación en la que se rinde un informe que será evaluado por una Comisión para determinar si existe o no causa probable para presentar una querella y cualquier otra recomendación para imponer medidas provisionales.[7] El Juez Presidente o la Jueza Presidenta podrá suspender de sueldo a un magistrado si es que se ha presentado una acusación en su contra por la comisión de un delito. De existir causa probable, se ordenará la presentación de la querella y su debida notificación.[8] El juez o jueza objeto del proceso deberá contestar la querella dentro del término que se le provee para ello, si no lo hace los cargos se considerarán negados.[9] Después comienza un proceso de descubrimiento de prueba con el fin de celebrar una vista evidenciaria.[10] Posterior a tal vista, la Comisión emitirá un informe con su recomendación. Una

---

[6] 4 LPRA Ap. XV-B, R. 5.

[7] 4 LPRA Ap. XV-B, R. 8 y 13.

[8] 4 LPRA Ap. XV-B, R. 14.

[9] 4 LPRA Ap. XV-B, R. 18.

vez ésta advenga final, el caso queda sometido para la decisión final del Tribunal.[11]

El proceso disciplinario es de tal envergadura que incluso la renuncia o la expiración del término del nombramiento del juez o la jueza querellada no impiden que continúe el procedimiento en su contra a tal grado que se pueden recomendar medidas disciplinarias por violación al Código de Ética Profesional.[12] Asimismo, este Tribunal tiene la potestad de determinar el trámite a seguir en aquellas circunstancias no contempladas por el reglamento, de forma que se garantice el cumplimiento de los propósitos que inspiran la reglamentación y los derechos del juez o la jueza, del promovente y la sana administración de la justicia.[13]

Por otra parte, la acción disciplinaria no está supeditada a ningún otro proceso. Ésta es independiente a las acciones civiles o criminales que puedan surgir de los mismos hechos. In re De la Texera Barnes, 165 DPR 526, 534 (2005); In re Deynes Soto, 164 DPR 327, 337 (2005). El proceso disciplinario no está subordinado a resultado alguno en otra esfera, ya sea civil o criminal, pues la corrección ética no constituye un castigo sino que persigue proteger al público y a la

_____

[10] 4 LPRA Ap. XV-B, R. 21.
[11] 4 LPRA Ap. XV-B, R. 30.

[12] 4 LPRA Ap. XV-B, R. 33.

[13] 4 LPRA Ap. XV-B, R. 34.

profesión legal mediante una investigación de las condiciones morales del querellado para determinar si puede continuar ejerciendo el cargo. Véanse: In re García Aguirre, 175 DPR 433, 441 (2009); In re Olivera Mariani, 173 DPR 498 (2008); In re Barreto Ríos, 157 DPR 352, 356 (2002); In re Liceaga, 82 DPR 252 (1961).

De igual forma, y dada la independencia de los procesos, es importante destacar que la Comisión carece de autoridad para adjudicar si la persona querellada cometió un delito. Su rol se restringe a evaluar la prueba para determinar si ha habido una violación a los Cánones de Ética Judicial. Como corolario, la Comisión se limita a escudriñar si el juez o la jueza incurrió en conducta proscrita por los cánones. Sin embargo, por el diverso alcance del peso probatorio requerido, esa determinación no constituye una adjudicación de la posible responsabilidad penal de un querellado. In re Ramos Mercado, supra, págs. 401-402. Claro está, posiblemente bastaría la convicción criminal de un juez o una jueza para concluir que éste o ésta ha incurrido en una violación a los Cánones de Ética Judicial. Empero, la absolución de un proceso penal no necesariamente implica el no quebrantamiento de las normas éticas. Íd. Mucho menos, la medida disciplinaria está atada al resultado del proceso penal. Véase In re Soto López, 135 DPR 642, 646 (1994).

En la encomienda de determinar una transgresión moral, la Comisión realiza la importante función de aquilatar la prueba para formular las determinaciones de hechos, conclusiones de derecho y recomendaciones que estime pertinentes. In re Ruiz Rivera, 168 DPR 246, 253 (2006). Así, las determinaciones de hechos que realice merecen nuestra deferencia. Íd., pág. 278; In re Saavedra Serrano, 165 DPR 817, 829 (2005). Empero, ello no supone una abdicación de este Tribunal para aplicar la acción disciplinaria que estime adecuada, por lo que es un precedente arraigado el que no estamos obligados a aceptar las recomendaciones de la Comisión sobre la querella disciplinaria. In re Sierra Enríquez, 185 DPR 830, 853 (2012); In re Muñoz, Morell, 182 DPR 738, 749-750 (2011); In re Hon. Maldonado Torres, 152 DPR 858, 869 (2000).

Para lograr ese ejercicio, se requiere que se aquilate la prueba a la luz de la carga probatoria aplicable, es decir, la prueba debe ser clara, robusta y convincente. 4 LPRA XV-B, R. 25. Véanse, además: In re Ruiz Rivera, supra, pág. 253; In re Rodríguez Mercado, 165 DPR 630, 641 (2005). Tal carga probatoria es mucho más sólida que la preponderancia de la evidencia, pero menos rigurosa que la prueba más allá de toda duda razonable que permea el proceso penal. La prueba clara, robusta y convincente es una prueba que produce en un juzgador de hechos una convicción duradera de que las

contenciones fácticas son altamente probables. In re Irizarry Rodríguez, res. 26 de agosto de 2015, 2015 TSPR 117, 193 DPR ___ (2015); In re Rodríguez Mercado, *supra*, pág. 641.

                                III

En las querellas consolidadas que nos ocupan, se imputa al Juez Acevedo Hernández el quebrantamiento de varios Cánones de Ética Judicial, 4 LPRA Ap. IV-B. En específico, infringir los siguientes cánones: (1) el Canon 1 que impone a los magistrados el deber de respetar y cumplir las leyes y ser fieles a su juramento; (2) el Canon 2 que recalca que los jueces ejemplificarán su independencia judicial, tanto en sus aspectos individuales como constitucionales; (3) el Canon 8 que exige que ejerzan sus funciones de forma independiente, libre de cualquier influencia ajena excluyendo la posible apariencia de que son susceptibles de actuar por influencias de personas o por motivaciones impropias; (4) el Canon 11 que impone a los magistrados y magistradas el que se abstengan de unirse en solidaridad con cualesquiera de las partes y prohíbe que realicen gestiones que constituyan intervenciones indebidas con la prueba, testigos o cualquier aspecto del proceso judicial; (5) el Canon 12 que proscribe la comunicación privada de los jueces y las juezas con las partes o sus representantes legales e impide que éstas influyan la actuación judicial en asuntos de su

competencia o bajo su consideración; (6) el Canon 14 que rige los postulados del proceder de los jueces y juezas durante los procedimientos judiciales; (7) el Canon 20 que limita la actuación de los jueces y juezas en casos en los que tengan o puedan tener prejuicio o parcialidad hacia alguna de las partes, interés personal o económico en el resultado del caso, por cualquier causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia. Además, requiere que en estos casos los jueces y juezas se inhiban tan pronto conozcan que así procede.

De igual forma, se imputó la violación al Canon 23 que intima el deber general de los jueces y juezas sobre cómo comportarse públicamente para que sus actuaciones no provoquen duda sobre su capacidad para adjudicar imparcialmente las controversias judiciales. Asimismo, el Canon 23 requiere que sus actuaciones no deshonren el cargo judicial ni interfieran el cabal desempeño de sus funciones judiciales. A su vez, se denunció inobservancia al Canon 30 que veda a los jueces y juezas de incurrir en conducta o actuación que dé la impresión de que ejercen o pretenden ejercer influencia indebida en el descargo de sus funciones judiciales. También, se imputó violación al Canon 35 que impide a los jueces y juezas aceptar regalos, legados, favores o préstamos de persona alguna; y el Canon 36 que prohíbe el que un juez

o jueza utilice el prestigio de su cargo para obtener beneficios personales o fomentar el éxito de negocios o actividades comerciales económicas personales o familiares. Igualmente, el Canon 36 que proscribe que un juez o jueza intervenga en pleitos cuyo resultado pudiera afectar sustancialmente un interés personal o familiar. Asimismo, deben actuar con cautela y prudencia para evitar la apariencia de conducta impropia o la sospecha razonable de que utilizan su cargo o prestigio para su beneficio personal o el de otras personas.

Los cánones imputados responden a la obligación moral y social que conlleva el ministerio de la Judicatura. Custodian la importancia de la imparcialidad y la apariencia de ésta en el ejercicio de las funciones judiciales. In re Ramos Mercado, *supra*, págs. 404-405. Su conducta debe honrar la integridad e independencia de su ministerio. In re Martínez González, 151 DPR 519, 527 (2000).

En los jueces y juezas se consagra el interés de que el deber judicial trascienda la función de administrar e interpretar la ley. La figura del juez o de la jueza requiere que se enaltezca la independencia judicial como garantía de justicia. Para ello, les está vedada la intervención en las causas judiciales de cualquier manera, ya sea a favor de una parte ante su sala o en el beneficio propio del magistrado o de terceros. Su función debe estar siempre libre de

intervenciones parcializadas que puedan influir en el caso o minar la confianza en los tribunales.

Un juez o jueza que otorga una ventaja indebida a alguna parte dentro del proceso judicial actúa en contra del debido proceso de ley. *In re Aprobación Cánones Ética 2005*, 164 DPR 403, 424 (2005). Por ello, resulta una práctica proscrita el que un juez o jueza sostenga comunicaciones privadas con las partes o sus representantes legales que pretendan influir su actuación judicial en asuntos de la competencia o bajo la jurisdicción del magistrado en ausencia de que los otros intereses no estén representados. El juez o jueza debe ser imparcial, por ello debe despojarse de todo vínculo que pueda arrojar dudas sobre su capacidad para adjudicar la controversia. *In re Grau Acosta*, 172 DPR 159, 171 (2007); *In re Martínez González*, *supra*, pág. 531.

Al juez o la jueza se le exige que responsablemente se inhiba oportunamente para proteger la legitimidad de sus actuaciones y la confianza de la ciudadanía en la Judicatura. *In re Ramos Mercado*, *supra*, págs. 404-405. Por ello, como expresamos, el Canon 20 impone la obligación de inhibirse en casos en donde haya un interés personal o económico, prejuicio o parcialidad hacia las partes y por cualquier causa que pueda razonablemente arrojar dudas sobre su imparcialidad.

De igual forma, el Canon 23 requiere que el comportamiento de los jueces y las juezas en público no ponga en duda su capacidad para ejercer su función adjudicativa de forma imparcial. Este canon va dirigido a que el comportamiento dentro y fuera del tribunal sea uno de respeto y enaltezca el cargo judicial. In re Aprobación Cánones Ética 2005, supra, pág. 445.

IV

En el caso de autos, la prueba presentada y no objetada consistió en la transcripción del proceso criminal federal. Véase In re De la Texera Barnes, supra, pág. 534. Examinados los testimonios allí vertidos, coincidimos con las determinaciones de hechos recogidas en el informe de la Comisión.

Sin lugar a dudas, la prueba presentada es clara, robusta y convincente para establecer, sin reservas, que el Juez Acevedo Hernández deshonró la toga. El testimonio vertido por el señor Román Badillo es contundente en cuanto al esquema realizado conjuntamente con el señor Acevedo López para que éste saliera airoso del proceso penal que presidía el magistrado.

La prueba presentada revela que desde noviembre de 2012 hubo un contubernio para que el Juez Acevedo Hernández fallara a favor del señor Acevedo López en la adjudicación criminal. A cambio de ello, el Juez Acevedo Hernández se reunió en varias ocasiones con el señor Román Badillo, disfrutó de cenas, regalos, relojes,

yuntas, motora, pagos de contribuciones y pagos para remodelar su hogar. Asimismo, solicitó que se interviniera para lograr su nombramiento en el Tribunal de Apelaciones y conseguirle empleo a dos familiares. Para lograr tal encomienda, el Juez Acevedo Hernández compareció a eventos públicos y restaurantes con el gestor del señor Acevedo López. Igualmente, y mientras se dilucidaba el proceso criminal, delegó en el señor Román Badillo la compra de materiales para arreglos a su garaje.

La participación del Juez Acevedo Hernández fue una activa. Éste revisó borradores de mociones a ser presentadas por la defensa del señor Acevedo López y visitó el lugar donde ocurrió el accidente con el fin de hacer recomendaciones a la estrategia de litigio, tales como la contratación de peritos, la verificación de llamadas y la solicitud de devolución del vehículo confiscado.

No tan sólo el Juez Acevedo Hernández incurrió en estas prácticas, sino que su osadía llegó al grado de comparecer públicamente a distintas actividades, fiestas y cenas acompañado con el gestor de un imputado de delito en un caso que él presidía. Su procacidad fue a tal nivel que a días de exonerar al señor Acevedo López era transportado por el señor Román Badillo a un seminario judicial. Durante el viaje de regreso cenó con el señor Román Badillo e ingirió bebidas alcohólicas.

Ello dio lugar a que el señor Román Badillo fuera detenido por conducir a exceso de velocidad y en aparente estado de embriaguez. Como si fuera poco, el Juez Acevedo Hernández se atrevió a inquirir en torno a la detención por agentes del orden público del señor Román Badillo y a solicitar concesiones a favor de éste. El prestigio del cargo no es razón para reclamar privilegios y subvertir los procesos regulares. In re Ramos Mercado, *supra*, págs. 396-397. Es la obligación del juez o jueza evitar crear incluso la apariencia de que utiliza su título como instrumento de intimidación o para imprimir mayor peso a sus reclamos. In re Gaetán y Mejías, 180 DPR 846, 859 (2011).

Ciertamente, las transcripciones presentadas reflejan, sin ambages, prueba clara, robusta y convincente a los efectos de que el Juez Acevedo Hernández violó los más fundamentales principios de independencia judicial. Estamos ante unos hechos en los que el togado solicitó y recibió favores o beneficios para realizar la función judicial. De esta manera, el Juez Acevedo Hernández socavó las más elementales nociones de honestidad y la moral. Con sus actuaciones, incurrió en una conducta contraria a la justicia, la honradez y los buenos valores. Es la primera vez que un juez es procesado criminalmente por ser parte de un esquema para beneficiar a un acusado a cambio de recibir

bienes y/o servicios para sí o para terceros.[14] Ello constituye una triste página en la historia de la Rama Judicial.

Las acciones desplegadas por el Juez Acevedo Hernández no representan a los miembros de la Judicatura que se conducen de forma digna, íntegra y honrada. Mucho menos son un reflejo de aquellos que inmolan con su faena diaria la justicia. La función judicial requiere que el juez o la jueza conserven en todo su desempeño la rectitud de su conducta tanto dentro como fuera del tribunal. In re Cruz Aponte, 159 DPR 170, 186 (2003).

Le corresponde a este Tribunal cerciorarse de que nuestros jueces y juezas continúen siendo ejemplos idóneos en la expresión constante de su conducta. Véase, In re Martínez González, *supra*, págs. 530-531. Los valores éticos que se les requiere a los jueces y juezas son más exigentes que para los abogados y abogadas. La razón estriba en que los jueces y juezas administran la justicia.

La convicción del Juez Acevedo Hernández es independiente de la acción disciplinaria ante este Tribunal. Por tanto, contrario a la recomendación de la Comisión, no es necesario esperar a que la convicción criminal sea final y firme. La facultad inherente del

---

[14]En ocasión anterior, se procesó un juez por soborno, debido a que cobraba por oficiar bodas en horas en que ejercía su función judicial. Véase In re Rodríguez Zayas, 151 DPR 532 (2000).

poder disciplinario de este Tribunal no puede estar subordinada a ningún proceso penal o civil y tampoco a las partes. Este Tribunal puede imponer y no tiene que posponer la sanción disciplinaria que proceda, una vez garantizadas las salvaguardas del proceso dispuesto para ello.

Ciertamente, el resultado penal constituye un agravante adicional, pues no podemos ignorar que una convicción por soborno y conspiración en el descargo de sus funciones adiciona un efecto perjudicial a la conducta antes esgrimida.[15] La convicción por conducta inmoral en sí misma lesiona la confianza que la ciudadanía pueda tener en quien se supone imparta justicia. Ese menoscabo no está sujeto a que la sentencia criminal sea firme. Su repercusión trasciende el resultado final. Una vez mancillada la imagen de imparcialidad del Juez Acevedo Hernández, o cualquier otro, éste simplemente carece de la entereza para ocupar el cargo. Para merecer el respeto de la sociedad y que se acaten sus decisiones, el juez y la jueza tiene que ser y proyectarse como ser humano sin tacha. Por ello, no basta solamente con ser bueno o buena, sino también parecerlo. No se admiten términos medios. Véase <u>In re Gaetán y Mejías</u>, *supra*, págs. 858-859.

---

[15]Más aún, cuando los otros imputados de delitos hicieron alegación de culpabilidad por los mismos hechos.

A la luz de lo expuesto, concluimos sin ambages que el Juez Acevedo Hernández infringió los Cánones 1, 2, 8, 11, 12, 14, 20, 23, 35 y 36 del Código de Ética Judicial.

V

Por último, la gravedad de la conducta incurrida permite la destitución provisional del Juez Acevedo Hernández de la profesión jurídica. Se ha presentado copia certificada de la sentencia por delitos graves que implican depravación moral emitida por el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico en contra del Juez Acevedo Hernández. A la luz de esa realidad, y en multiplicidad de casos, este Tribunal no ha vacilado en destituir inmediatamente a los abogados y abogadas del privilegio de ejercer la profesión jurídica. Véanse: In re Colón Ledée, 190 DPR 51 (2014); In re Martínez Maldonado, 185 DPR 1085 (2012); In re Arroyo Arroyo, 182 DPR 83 (2011); In re Castillo Martínez, 173 DPR 249 (2008); In re Morell Corrada, 171 DPR 327 (2007).

Empero, el procedimiento disciplinario ante nuestra consideración incluyó infracciones a los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap IX. A estos efectos, recordamos que para ostentar el cargo de juez o jueza es un requisito ser abogado o abogada. Por tanto, a los jueces y juezas igualmente les aplican las normas mínimas que rigen la profesión jurídica. De igual forma, están sujetos al poder inherente de este Tribunal para reglamentar el ejercicio de la abogacía. In re Colón Ledée, res. 9 de junio de 2015, 2015 TSPR 198, 193 DPR ___ (2015). En tal facultad, resulta incuestionable el

que este Tribunal pueda desaforar o suspender aquellos miembros de la profesión jurídica que no estén aptos para desempeñar tal ministerio. In re García Suárez, 189 DPR 955, 998 (2013). El ejercicio de la autoridad judicial por el juez o jueza -quien ostenta el cargo porque es abogado o abogada- no puede relevarle de las normas básicas de conducta que los valores éticos de su condición profesional le imponen. In re Gallardo, 81 DPR 19 (1958). Por consiguiente, el cargo que ocupa no puede servir de escudo para escapar las consecuencias disciplinarias de su conducta como abogado o abogada. Íd. Ante ello, el procedimiento disciplinario contenido en las Reglas de Disciplina Judicial no excluye aquellas violaciones relacionadas al Código de Ética Profesional.

En consecuencia, durante el proceso disciplinario ante este Tribunal, se le imputó al Juez Acevedo Hernández vulnerar los Cánones 35 y 38 del Código de Ética Profesional. Éstos sancionan la conducta de un miembro de la profesión jurídica que no sea honesto y no exalte el honor y dignidad de su profesión, aunque al así hacerlo conlleve sacrificios personales. Véase, In re Santiago Concepción, 189 DPR 378, 404-405 (2013).

En lo que nos concierne, el Canon 35 establece que la conducta de cualquier miembro de la profesión jurídica ante los tribunales, hacia sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. La importancia del referido canon consiste en

que la "verdad y la justicia están necesariamente juntas: por lo que sería intrínsecamente contradictorio administrar la justicia o reclamar su actuación, sin respetar la verdad". In re Colton Fontán, 128 DPR 1, 112 (1991) citando a G. Del Vecchio, La obligación jurídica de la verdad, 11 Rev. Fac. Der. y Ciencias Sociales de Montevideo 13, 25 (1960). Allí se dispone que no es sincero ni honrado utilizar medios que sean inconsecuentes con la verdad y que no se debe inducir al juzgador a error mediante la utilización de artificios o de una falsa relación de hechos o del Derecho. Así, se requiere que todo miembro de la profesión debe cumplir con los deberes de sinceridad, exaltación del honor y dignidad de la profesión. En virtud de ello, el abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon. In re Nieves Nieves, 181 DPRR 25, 41-42 (2011). Los abogados y abogadas deben siempre cumplir con la verdad. In re Salas Arana, 183 DPR 339 (2013). Lo esencial para que se infrinja el Canon 35 es que se falte a los valores de honradez y veracidad, pilares de la profesión jurídica. In re Molina Oliveras, 188 DPR 547, 554 (2013) (Resolución).

Por su parte, el Canon 38 exige a los abogados y abogadas preservar el honor y la dignidad de la profesión que representan, aunque ello suponga

sacrificios personales. La función social que ejerce y la institución que representa, demanda que se desempeñe con el más alto sentido de responsabilidad profesional y ética en todas la facetas de su vida. In re Irizarry Rodríguez, *supra.* Los abogados y abogadas deben desempeñarse con dignidad y alto sentido del honor, aunque ello implique sacrificios personales y deberá conducirse de forma digna y honorable tanto en su vida privada como en el desempeño de su profesión. In re Quiñones Ayala, 165 DPR 138, 145 (2005).

Cada abogado es un espejo en el que se refleja la imagen de la profesión. In re Ortiz Brunet, 152 DPR 542, 556 (2000) citando a In re Coll Pujols, 102 DPR 313, 319 (1974). El Canon 38 se infringe con el sólo hecho de que la actuación del abogado o abogada sea incompatible con su deber y su conducta sea impropia afectando su independencia profesional frente a otro interés público o privado. In re Molina Oliveras, *supra*, pág. 555.

La incompatibilidad de funciones puede ser por razones de derecho o hecho. In re Corona Muñoz I, 141 DPR 640, 647 (1996). La incompatibilidad de derecho presupone una norma legal que prohíbe el ejercicio de la abogacía y a la vez, otra actividad, función o cargo mientras que la de hecho se refiere a que los puestos tienen conflictos más o menos permanentes en sus deberes. Íd.

La prueba clara, robusta y convincente presentada en este caso estableció que las actuaciones del Juez Acevedo Hernández constituyeron también infracciones a los Cánones 35 y 38 del Código de Ética Profesional. Este último en su vertiente del requerimiento de exaltar el honor y la dignidad de su profesión. El hecho de que el Juez Acevedo Hernández se desempeñara como magistrado no le exime del cumplimiento con las normas mínimas que imperan en la profesión jurídica. Mientras éste era juez, fungió y asesoró legalmente al imputado que debía enjuiciar. Igualmente, intentó influir en el ánimo de un oficial del orden público a favor de un tercero. Durante el proceso judicial que presidió, antepuso sus intereses personales a la búsqueda de la verdad y justicia. Con sus actuaciones, faltó a la lealtad que su cargo requiere, socavó su independencia de criterio y entorpeció la búsqueda de la verdad y la justicia en contravención al honor y dignidad de la profesión.

## VI

Como corolario, este Tribunal concluye que el Juez Acevedo Hernández incurrió en violaciones a los Cánones 1, 2, 8, 11, 12, 14, 20, 23, 30, 35 y 36 de Ética Judicial y los Cánones 35 y 38 del Código de Ética Profesional. Ningún juez o jueza de la Rama Judicial puede escapar a las consecuencias disciplinarias de una conducta que lacera nuestro sistema de justicia. Basta con una decisión judicial fundada en motivaciones

impropias o en favoritismo hacia un litigante o su abogado para que proceda la destitución. In re Jackson Sanabria, 97 DPR 1, 6-7 (1969).

En vista de ello, procedemos a destituir inmediatamente al Lcdo. Manuel Acevedo Hernández del cargo de Juez Superior y suspenderlo indefinidamente de la profesión de la abogacía.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Manuel Acevedo Hernández

AD-2014-1
AD-2014-2

SENTENCIA

San Juan, Puerto Rico, a 14 de diciembre de 2015.

Por las razones expuestas en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se destituye inmediatamente al Lcdo. Manuel Acevedo Hernández del cargo de Juez Superior y se suspende indefinidamente de la profesión de la abogacía.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo